No. 86-559

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

BUTTE-SILVER BOW LOCAL GOVERNMENT,
and the Chief Executive Officer
and the Council of Commissioners
of Butte-Silver Bow Local Govern-
ment, a political subdivision of the
State of Montana,

        Appellants,

    -vs-

ARNOLD OLSEN, DISTRICT JUDGE OF THE
DISTRICT COURT OF THE SECOND JUDICIAL
DISTRICT OF THE STATE OF MONTANA, IN
AND FOR THE COUNTY OF SILVER BOW,

        Respondents.

---

APPEAL FROM:  District Court of the Second Judicial District,
               In and for the County of Silver Bow,
               The Honorable Arnold Olsen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Goetz, Madden & Dunn; James H Goetz argued, Bozeman,
        Montana

    For Respondent:

        R. Lewis Brown argued, Butte, Montana

---

             Submitted:    June 17, 1987

             Decided:    August 14, 1987

Filed:   AUG 14 1987

*Ethel M. Harrison*

Clerk

two year collective bargaining agreement. A May 1986 union vote favored the reclassification of court deputies at the proposed lower grade. In at least two other union meetings, members were told of the appeal process in regard to reclassification. Negotiations continued to the point where the government offered a 10.4% salary raise over two years: 4.8% for 1986-87, 5.6% for 1987-88. No salaries were to be reduced. While negotiations continued, Judge Olsen entered an ex parte order on August 8, 1986, granting a 10.2% salary increase for 1986-87 to the eight members of the court staff.

The court gave two reasons for its action. First, that the government failed to submit the budget to the District Court as required by local ordinance and Montana law, and second, that the budget preparation worksheet was inadequate because it was not line itemized as to salary figures and recipients. To avoid a contempt citation, Butte-Silver Bow included the eight salary increases in its 1986-87 budget but noted that the increases were subject to final disposition of the order. A motion for reconsideration was filed on August 11, 1986. On September 22, 1986, Judge Olsen set the hearing on the motion for reconsideration for September 23, 1986. That same day the union voted 23-7 to accept the government's contract which included the revised classification scheme. Minutes of the meeting indicate that the court deputies protested the union's acceptance of the classification system. After the September 23 hearing, the judge denied the motion for reconsideration, concluding:

> [a]s a matter of fact, that by some plan, conspiracy, or mistake, the union and management leadership determined to demote and denigrate the employees of the Judges and the Clerk of Court, and by that action demoralized these personnel of the Court system.

3

Another union vote was taken in October 1986 due to some confusion about the September 1986 contract ratification vote. At that meeting, the union, for a second time, voted to accept the revised classification system. Inadvertently, Butte-Silver Bow has been paying court staff salaries pursuant to the contract agreed to by itself and the union, not at court-ordered levels.

The first issue is whether the District Court had inherent powers to set the salaries of certain court staff by a sua sponte and ex parte judicial order. We begin by referring to our statement in Board of Com'rs. v. Eleventh Jud. Dist. Court (1979), 182 Mont. 463, 470-71, 597 P.2d 728, 732:

> We admonish the District Courts to use the statutorily implied funding power we recognize here with judicious restraint. The constantly changing demands upon the judicial system must be worked out in a spirit of independent identity and balance among legislative, executive, and judicial branches of government by reasonable interaction tempered with respect for the limitations of their power.

Inherent judicial power to compel funding in Montana should only be used when an emergency arises or when the established methods for providing funding have failed. State ex rel. Hillis v. Sullivan (1913), 48 Mont. 320, 137 P. 392. The Washington Supreme Court addressed this issue in Matter of Salary of Juvenile Director (Wash. 1976), 552 P.2d 163, 173:

> If separation of powers has as a basic element the preservation of the rule of law, court decisions must not be biased in favor of court funding . . . These considerations, as well as recognition that inherent power derives from the need to protect the functioning of an independent branch, have led courts to

4

set a high standard for the application of inherent power in funding matters. The burden is on the court to show that the funds sought to be compelled are reasonably <u>necessary</u> for the holding of court, the efficient administration of justice, or the fulfillment of its constitutional duties. (Citations omitted.) In addition, it is generally recognized, as stated in the oft-quoted case <u>State ex rel. Hillis v. Sullivan</u>, 48 Mont. 320, 329, 137 P. 392 (1913), that inherent power is to be exercised only when established methods fail or when an emergency arises. (Citation omitted.) (Emphasis in original.)

After reviewing the record, the court concluded:

In the present controversy, there is a fundamental failure of proof by respondent Superior Court. No evidence in the record supports by a preponderance of the evidence-let alone by a clear, cogent and convincing showing-respondent's determination that the salary paid to the Director of Juvenile Services was so inadequate that the court [could] not fulfill its duties. Neither does the record show that an increase in salary was reasonably necessary for the efficient administration of justice. (Citation omitted.) Lacking such proof, there is no basis for the exercise of inherent power in the circumstances of this case, and respondent's attempt to do so imposed an improper check on the function of the legislative branch of government.

An unreasoned demand for budgetary consideration is a threat to the image of and public support for the courts. Webster Cty Bd. of Sup'rs. v. Flattery (Iowa 1978), 268 N.W.2d 869, 874. A true financial emergency exists when the local government refuses to pay legitimate court expenses and as a result, trials must be postponed, jurors and witnesses cannot

5

be paid and salaries for judges and court personnel cannot be provided for; in other words, when the lack of funds stops or threatens to stop the efficient and orderly administration of justice and court business. See State ex rel. Dist. Ct., Etc. v. Whitaker (Mont. 1984), 681 P.2d 1097, 41 St.Rep. 1104.

Analyzing this case under the two-part test of State ex rel. Hillis v. Sullivan, supra, we first must ask whether a true financial emergency existed to justify the imposition of the judge's salary order. The only justification offered by the trial judge was that,

> [B]y some plan, conspiracy, or mistake, the union and management leadership determined to demote and denigrate the employees of the Judges and the Clerk of the Court, and by that action demoralized these personnel of the Court system.

This statement is not factual evidence of a true financial emergency in Silver Bow County District Court, but merely a subjective reflection on the budgeting process. The local government was not refusing to pay court staff salaries, nor was it proposing to reduce any court employee's salary. To the contrary, the government was proposing a 10.4% salary increase over two years for these employees, and there appeared to be no impairment of court operations.

The second part of the Sullivan test is whether the established methods for providing funding have failed. At the time the government entered its order, the government was following the required procedure for adopting an annual budget and submitting it to the union for ratification. The union voted 23-7 to ratify the contract. Under the contract, the employees had the right to appeal the reclassification, but the record fails to disclose that they exercised their right to appeal. We conclude that the established methods

6

for funding the court positions had not failed, and therefore the District Judge had no inherent authority to enter an _ex parte_ order establishing salaries for these positions. We refer to a particularly relevant concurrence in Webster Cty Bd. of Sup'rs. v. Flattery, supra, 268 N.W.2d at 879:

> If the courts <u>can</u> function but the dispute is over the <u>extent</u> of the salaries, . . . which are to be provided, I come down on the side of the appropriating authorities. (Emphasis in original.)

The second issue is whether the issue on appeal is moot. The burden to establish that the issue raised in an appeal is moot is a heavy one. See Combined Communications Corp. v. Finesilver (10th Cir. 1982), 672 F.2d 818, 821. In addition there are exceptions to the mootness rule, as the Ninth Circuit has so held:

> [The mootness] exception is limited to cases where
>
> (1) [T]he challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and
>
> (2) there is a <u>reasonable expectation</u> that the same complaining party would be subjected to the same action again. (Citations omitted.) . . . The exception to mootness for those actions that are capable of repetition, yet evading review, usually is applied to situations involving governmental action where it is feared that the challenged action will be repeated. The defending party being constant, the emphasis is on continuity of identity of the complaining party. (Emphasis in original.)

Lee v. Schmidt-Wenzel (9th Cir. 1985), 766 F.2d 1387, 1390.

The government argues that the mootness exception applies since the District Judge could again enter a budget

7

order the following year (1987) prior to the time the government adopts a final budget. The District Judge argues that the issue on appeal is moot because the government adopted its budget and included the budget order therein, and that once the budget was adopted, it could not be changed. We reason that the "capable of repetition, yet evading review" exception to the mootness rule is more tenable since the court could in the absence of our decision, make a budget order for 1987 and the years beyond. We conclude that the issue on appeal is not moot.

We reverse and vacate the order of August 8, 1986, and the order of October 3, 1986, which denied the government's motion for reconsideration.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8

Mr. Justice John C. Sheehy, dissenting:

In a recent case Mead v. McKittrick (Mont. 1986), ___ P.2d ___, 43 St.Rep. 1886, we upheld the right of a district judge to hire his own secretary, saying "if an employee's duties are intimately related to the functioning of the judicial process, then personnel decision regarding that employee are also part of the process" (citing Forrester v. White (7th Cir. 1986), 792 F.2d 647, 655).

The classification of court employees within a general matrix of county employees for pay purposes is a matter of direct concern to the court and the judicial process. Here the District Court found that the classification of its employees by the union and the city-county management served to "demote and denigrate" the court employees. The majority dismisses that finding as "subjective," a new standard of appellate review. Yet it clearly is true that if court employees are demoted to a lesser pay grade than their duties and responsibilities require, they are denigrated. The judicial process is directly affected, because court employees would not be properly compensated when compared to city-county employees of similar rank in responsibility.

There is no "unreasoned demand" for budgetary consideration involved in this case, and the basis for Webster Cty. Bd. of Sup'rs. v. Flattery (Iowa 1979), 268 N.W.2d 869 therefore does not apply here. What jumps out of the record is that the independent professional consultant favored classifying court personnel at a higher grade. The union and management bargained that away without any consideration of the rights of the District Court to properly-compensated employees, or of the adverse effect on the judicial process. The District Court here had an

- 9 -

inherent and a statutory right to act to protect the judicial process. Section 3-1-113, MCA. It does not have to wait until the emergency actually occurs. It has a right to forestall the emergency. Only a few years ago, when the county commissioners of Cascade County refused to provide proper funds for the operations of its District Court, this Court ordered the county commissioners to provide those funds for the very purpose of avoiding an impending emergency. We did not wait until the collapse occurred, although here the majority indicate an actual emergency is necessary for a court to act.

In like vein, there is no logic in the position that because Court employees are paid the same as last year, they are not adversely damaged by the matrix pay plan. Self-esteem may be more important to an employee than the pay involved.

Inadvertently or not, the city-county did not comply with the District Court orders either before or after it was brought to the attention of management. The orders of the District Court have not been and are not now being obeyed. The orders which are the subject of this appeal have had no more effect than scraps of paper. It may be fortunate that the majority are unwilling to test the efficacy of our orders in Butte.

I would not concede to the management of the city-county of Butte-Silver Bow, nor to its negotiating team, nor to the union negotiations the right to classify adversely court employees for purposes other than court business. Therefore, I would affirm the orders of the District Court.

_____
Justice

I concur in the foregoing dissent.

_____
Justice

- 10 -

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Butte-Silver Bow appeals the denial of its motion for reconsideration of an order setting the salaries of court personnel in Silver Bow County District Court. The issues on appeal are:

(1) whether the District Court had inherent powers to set the salaries of certain court staff by a sua sponte and ex parte judicial order;

(2) whether the issue on appeal is moot.

We reverse.

In 1983, the employees of Butte-Silver Bow organized a union to represent their interests in collective bargaining negotiations. The agreement to organize incorporated a job classification system but also provided for review of the system by a union-management committee. The purpose of the review process was to lay the groundwork for a revised job classification system that would more accurately reflect the requirements of each position. Salaries would then be adjusted accordingly. A point system was used to rate each employee, and interviews and surveys were conducted. The committee then met to classify each employee under the revised system with the understanding that dissatisfied employees could appeal their new classifications.

Between 1984 and 1986, the committee reached agreement on reclassification with many employees, but an impasse remained with eight district court employees. An independent professional consultant hired to resolve the dispute favored reclassifying certain court personnel at a grade higher than that proposed and endorsed an appeals process for those dissatisfied with their reclassifications. The entire reclassification process was part of the negotiations for a

2