No. 93-451

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

DAVID K. CLARK, Missoula County
Justice of the Peace,
    Petitioner and Respondent,

   -vs-

ANN MARY DUSSAULT, BARBARA EVANS and
JANET STEVENS, Missoula County Commissioners,
    Respondents and Appellants,

  and

ANNE P. GUEST,
    Intervenor and Appellant.

**FILED**

JUL 12 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

      For Intervenor and Appellant:

          Larry Jones, Attorney at Law, Missoula, Montana

      For Petitioner and Respondent:

          Stacey Weldele-Wade; Milodragovich, Dale & Dye,
          Missoula, Montana

      For Respondents and Appellants:

          Nancy K. Moe; Ellingson & Moe, Missoula, Montana

          Michael W. Sehestedt, Deputy County Attorney,
          Missoula, Montana

      For Amici Curiae:

          Jim Nugent, City Attorney, City of Missoula,
          Missoula, Montana (Missoula and League of Cities
          and Towns)

                    Submitted on Briefs:  May 23, 1994

                           Decided:  July 12, 1994

Filed:

                        Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Anne Guest (Guest) and the Missoula County Board of Commissioners (County Commissioners) appeal from the grant of summary judgment to David Clark (Clark) by the Fourth Judicial District Court, Missoula County. The summary adjudication was based on the court's conclusion that Clark was not bound by the grievance procedures applicable to county employees because of his inherent authority as Justice of the Peace and the doctrine of judicial immunity. Clark cross-appeals the court's denial of his motion to amend the judgment to add an award of attorneys' fees. We reverse the court's grant of summary judgment and affirm its denial of the motion to amend the judgment.

Guest was employed by Missoula County as office manager for the Missoula County Justice Court (Justice Court). The Justice Court is comprised of Courts 1 and 2, presided over by Clark and Michael Morris (Morris), respectively. In May of 1991, Clark presented a "supervisory plan" to Guest, setting forth new guidelines and priorities to be followed by her and the clerical staff in Court 1. Morris declined to implement the plan in Court 2.

Several weeks later, Clark felt that Guest was not attempting to institute the desired changes and verbally reprimanded her. Guest submitted a six-page memorandum responding to the verbal reprimand and, while Clark was on vacation during the last part of June, detailed her role as manager under the supervisory plan to

2

the clerical staff.

Early in July, County Commissioners Ann Mary Dussault (Dussault), Barbara Evans (Evans) and Janet Stevens (Stevens) requested Clark to attend a meeting to address concerns raised by his clerical staff. Before that meeting could be held, Clark scheduled a meeting with his staff to resolve their differences. Stevens and Dussault advised Clark that they would attend any such meeting. Two meetings were held; one was attended by Dussault, Stevens, Clark and his clerical staff, including Guest, and the other by all three County Commissioners, Clark, members of the Personnel Department, and Deputy County Attorney John Devore.

Subsequent to the meetings, Clark placed a written reprimand in Guest's personnel file. In the reprimand, Clark stated that Guest was insubordinate because she failed to implement the supervisory plan, made unconscionable misrepresentations in her six-page memorandum, and disrupted the clerical staff. He also indicated that further disciplinary action was being contemplated.

Clark remained unhappy with Guest's implementation of his supervisory plan. On August 12, 1991, he suspended Guest without pay for seven days. Morris refused to acknowledge the suspension and directed Guest to continue working. The Missoula County Personnel Department also directed Guest to ignore the suspension absent an agreement by both justices of the peace.

Guest filed a grievance to contest the suspension on August 16, 1991, pursuant to the Missoula County Personnel Policies Manual

3

(County Manual). She sought to have the notice of suspension and all related documents removed from her file. A grievance hearing before the County Commissioners was scheduled for December 19, 1991. The County Commissioners refused Clark's request to recuse themselves from hearing the grievance.

On December 17, Clark filed separate petitions for a writ of prohibition and an alternative writ of prohibition requesting the District Court to order the County Commissioners to stop interfering with his operation of Court 1. The District Court immediately issued the alternative writ, cancelling the grievance hearing scheduled two days later. The court also ordered the County Commissioners to appear at a January 10, 1992, hearing and show cause why a permanent writ should not be issued. The show cause hearing subsequently was continued and, apparently, never held.

In January of 1992, Guest filed a motion to intervene in the District Court proceeding pursuant to Rule 24(a), M.R.Civ.P. She argued that she was entitled to a hearing regarding Clark's disciplinary action under notions of due process and that her participation in the litigation was necessary to protect that interest in light of the court's cancellation of the grievance hearing. Clark opposed the motion.

While Guest's motion was pending, Clark filed an amended petition. In addition to the permanent writ of prohibition previously requested, Clark sought declaratory relief. He

requested the court to determine that he had the inherent authority to suspend Guest under §§ 3-1-111 and 3-1-113, MCA, without interference by the County Commissioners and that judicial immunity, codified at § 2-9-112(2), MCA, precluded Guest's grievance. He also requested reimbursement of his attorneys' fees and court costs.

On February 12, 1992, the District Court granted Guest's motion to intervene. Shortly thereafter, the court issued an order dissolving the alternative writ of prohibition and establishing interim operating procedures for the Justice Court. Pursuant to the order, Guest's employment as office manager continued, but only in relation to the operation of Morris' court. The order prohibited all contact between Clark and Guest.

Following the filing of stipulated facts in October of 1992, Clark moved for summary judgment. Respondents and Guest opposed the motion and, in November, filed separate cross-motions for summary judgment. On May 10, 1993, the District Court granted Clark's motion for summary judgment, concluding that he did not have to comply with the grievance procedures because they interfered with his inherent authority to ensure the proper functioning of the Justice Court. The court also concluded that judicial immunity precluded Guest from maintaining her grievance against Clark.

The judgment entered by the court on its grant of summary judgment did not award attorneys' fees and costs to Clark. He

5

subsequently moved the court to amend the judgment pursuant to Rule 59(g), M.R.Civ.P., to include such an award. The motion was denied.

Guest and the Commissioners appeal the District Court's grant of summary judgment to Clark. Clark cross-appeals, asserting error in the court's denial of his motion to amend the judgment. The Montana League of Cities and Towns and the City of Missoula appear as amici curiae.

As a threshold matter, we address Clark's contention that this case is moot because Guest left county employment in June of 1993. A case may become moot for the purpose of appeal where it has lost any practical importance to the parties because of a change in circumstances prior to the appellate decision. Matter of T.J.F. (1987), 229 Mont. 473, 475, 747 P.2d 1356, 1357. A party seeking to establish that an issue raised on appeal is moot has a heavy burden. Butte-Silver Bow Local Gov't v. Olsen (1987), 228 Mont. 77, 82, 743 P.2d 564, 567.

Pursuant to Clark's request for declaratory relief, the District Court determined he had the inherent authority to discipline and discharge court personnel without consulting with the County Commissioners. It also determined that judicial immunity barred the filing of a grievance against Clark, the final step of which is a review by the County Commissioners. Guest's departure from county employment does not negate the legal effect of the District Court's judgment on Clark's relationship with the

6

Commissioners and, therefore, does not render the case moot as to them.

Nor is this appeal moot as to Guest. She filed her grievance when she was a county employee pursuant to the grievance provisions of the County Manual. Clark cites no authority for his position that Guest's right to maintain the grievance terminated when she left county employment. Thus, the District Court's judgment barring a grievance against Clark pursuant to judicial immunity remains of practical importance to Guest. We conclude that this case is not moot.

Did the District Court err by granting summary judgment to Clark?

Our standard for reviewing a grant of summary judgment is the same as that used by the District Court. Emery v. Federated Foods (Mont. 1993), 863 P.2d 426, 431, 50 St.Rep. 1454, 1456. We determine whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. Here, summary judgment was based on stipulated facts filed by the parties. Thus, we focus on the court's conclusions supporting the summary adjudication. Our review of legal conclusions is plenary. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

Inherent Power

According to the District Court, a justice of the peace has

7

the inherent power to take steps necessary to ensure the proper functioning of the justice court, including the authority to make personnel decisions. Although the court recognized established personnel procedures are to be followed "as much as possible," it stated that a justice of the peace could exercise inherent power when the established procedures failed, citing Hillis v. Sullivan (1913), 48 Mont. 320, 137 P. 392, and its progeny.

Applying those principles to the case before it, the District Court determined that Clark had adequately complied with the personnel procedures in the County Manual by following the progressive disciplinary steps. It concluded, however, that Clark did not have to comply with the grievance procedures because they were inconsistent with his inherent power.

Appellants contend the established personnel procedures that Clark was required to follow before exercising his inherent authority under Hillis included the grievance procedures. We agree.

Justice courts undoubtedly possess the inherent power to do those acts necessary to ensure their proper functioning. The concept of inherent power is codified at § 3-1-113, MCA, which provides that when jurisdiction is conferred on a court or judicial officer, all the means necessary for the exercise of that jurisdiction are also given.

A court's exercise of inherent power, however, is not without limitations. In Hillis, we determined that a court could exercise

8

its inherent power only when the established methods for addressing the court's needs failed or when an emergency arose that was not remedied by the established methods.  Hillis, 137 P. at 395.  On that basis, we concluded that a district court could not exercise its inherent powers to obtain "attendants" necessary for the court's functioning without first approaching the county commissioners or the sheriff, who were statutorily required to provide them.  We subsequently have reiterated the limitations on a court's exercise of its inherent power set forth in Hillis and consistently have required that inherent power be exercised only when established methods fail or an emergency arises. See Browman v. Wood (1975), 168 Mont. 341, 543 P.2d 184; Board of Commissioners v. Eleventh Jud. Dist. Court (1979), 182 Mont. 463, 597 P.2d 728; Butte-Silver Bow Local Gov't v. Olsen (1987), 228 Mont. 77, 743 P.2d 564.

The established methods for disciplinary action against Guest, a county employee, are contained in the County Manual.  Progressive disciplinary actions of oral reprimand, written reprimand or warning notice, suspension, demotion and dismissal are required. The disciplinary procedures also give the employee the right to grieve and appeal all disciplinary actions imposed.  Thus, under Hillis, Clark was required to comply with these established methods--including the grievance process--before he could exercise the inherent powers of the court to suspend Guest.

Clark contends that a grievance hearing before the County

Commissioners on Guest's suspension would violate the separation of powers doctrine. According to Clark, the hearing would interfere with the independence of the court by requiring him to be an adverse witness against court personnel, allowing his decision on personnel matters to be overruled by another branch of government, and possibly requiring him to accept an employee he believes is unsatisfactory.

We disagree that the separation of powers doctrine precludes compliance with the grievance procedure. In Hillis, we determined that the county commissioners' hiring of a clerk to assist the district court did not violate the separation of powers. We stated:

> The separation of the government into three great departments does not mean that there shall be "no common link of connection or dependence, the one upon the other in the slightest degree" [citation omitted]; it means that the powers properly belonging to one department shall not be exercised by either of the others [citation omitted].

Hillis, 137 P. at 395. In addition, the County Commissioners are statutorily required to provide Clark with the clerical assistance necessary to perform his judicial duties. Sections 3-10-103 and 7-4-2401, MCA. Thus, the County Commissioners' hiring of Guest to supervise Clark's clerical staff is consistent with the separation of powers. We do not see how a grievance hearing before the County Commissioners regarding Clark's suspension of Guest could violate the separation of powers doctrine when the County Commissioners' independent hiring of Guest as office manager of the Justice Court

10

is consistent with that doctrine. Furthermore, we are not persuaded that the County Commissioners' hearing of a grievance constitutes an exercise of authority belonging to the judicial branch.

We hold that the District Court erred in concluding that Clark's inherent power as a justice of the peace precluded a grievance hearing before the County Commissioners.

Judicial Immunity

The District Court concluded that Clark was entitled to judicial immunity for his suspension of Guest under Mead v. McKittrick (1986), 223 Mont. 428, 727 P.2d 517. Mead is distinguishable, however, from the present case.

In Mead, a newly-elected district court judge terminated the employment of his predecessor's personal secretary in order to hire his own. We began our analysis by setting forth Montana's codification of the common law doctrine of judicial immunity, whereby a judge is "immune from suit for damages arising from his lawful discharge of an official duty associated with judicial actions of the court." Section 2-9-112, MCA. We observed that district court judges have the exclusive authority to choose their own secretaries because of the "distinct and unique status" a personal secretary occupies among court employees. Mead, 727 P.2d at 519. We concluded that the appointment and removal of a personal secretary--a "key court employee"--was a "judicial action"

11

to which judicial immunity applied pursuant to the statute. Mead, 727 P.2d at 519.

Here, Guest is not a "key employee" under our Mead analysis. Guest was not a member of Clark's personal staff over whom Clark had exclusive appointment and removal authority. She was hired by Missoula County. Furthermore, Guest was hired as an office manager for the combined Justice Court operations of Justices of the Peace Clark and Morris; as such, she was not the type of personal and "key" employee to both justices of the peace as the personal secretary was to the district court judge in Mead. Nor were her duties of the confidential and close nature of those generally associated with a personal secretary.

Because Guest was not a "key employee," her suspension was not a judicial act entitled to immunity under Mead. We conclude that the District Court erred in applying judicial immunity to bar the maintenance of a grievance hearing regarding the suspension.

As a result of our conclusions on inherent authority and judicial immunity, no basis remains for the grant of Clark's motion for summary judgment. Therefore, we hold that the District Court erred in granting summary judgment in Clark's favor.

Did the District Court err by denying Clark's motion to amend the judgment to award attorneys' fees?

The District Court determined that Clark's Rule 59(g), M.R.Civ.P., motion for attorneys' fees was based on the County Commissioners' alleged breach of a contract to pay such fees. The

12

court declined to rule on the merits of the breach of contract claim, however, and determined that granting attorneys' fees on the basis of the breach of contract claim was premature.

The amendment of a judgment is within the discretion of a district court. See Marriage of Grounds/Coward (1993), 256 Mont. 397, 402-03, 846 P.2d 1034, 1037-38; Marriage of Vakoff (1992), 252 Mont. 56, 59-60, 826 P.2d 552, 554. Thus, we review the District Court's refusal to amend the judgment for an abuse of discretion. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603-04.

Clark first contends that the District Court was required to award attorneys' fees based on his breach of contract claim. According to Clark, the County Commissioners entered into an agreement to pay his attorneys' fees in November of 1991 and refused to pay the fees incurred after March 24, 1992.

The record indicates, however, that Clark did not raise the alleged breach of contract in his amended petition or motion for summary judgment or, indeed, at any time prior to the court's entry of summary judgment in his favor. While Clark made a passing mention of the alleged agreement to pay attorneys' fees in his 22-page Statement of Facts in Support of Motion for Summary Judgment, the motion itself contained no claim for attorneys' fees based on a breach of contract theory. That claim was first raised in Clark's motion to amend the judgment; even then, it was supported only by a postjudgment affidavit by Stacey Weldele-Wade (Weldele-

13

Wade), Clark's attorney, attached to his _reply_ brief in support of his motion to amend the judgment. We agree with the District Court that it was premature to award attorneys' fees based on a breach of contract claim that had not been raised and argued by the parties in any meaningful or appropriate fashion.

Furthermore, it is clear that the summary judgment could not be amended to award attorneys' fees because a factual dispute exists regarding the scope of the parties' agreement. Clark contends that the attorneys' fees agreement was unconditional. The County Commissioners argue that the agreement pertained only to attorneys' fees incurred by Clark in regard to the grievance hearing. On that basis, they assert that the agreement allowed them to terminate the payments when it became clear that a grievance hearing was unlikely. In her affidavit, Weldele-Wade supported Clark's position and, to the extent that she stated the County Commissioners approved payment of the attorneys' fees "up to and through the date of the grievance hearing," the County Commissioners' position as well.

Clark also argues that the District Court erred by failing to award attorneys' fees under §§ 2-9-305(4), 27-26-403, 7-4-2711(2) and 25-10-701, MCA. These claims fail for the same reason as his breach of contract claim. The statutes were not asserted as grounds for an award of attorneys' fees prior to the court's grant of summary judgment and, indeed, Clark first raised his § 25-10-701, MCA, claim in his reply brief in support of his motion to

14

amend the judgment, giving the County Commissioners no opportunity to respond. Furthermore, Clark premised his § 7-4-2711(2), MCA, claim on the fact that he was unrepresented when the County Commissioners contracted counsel for Guest. This fact is not of record and, indeed, is disputed by the County Commissioners. For these reasons, an award of attorneys' fees based on any of the statutes is premature unless and until an appropriate record is created and the parties have a full and fair opportunity to address the issues.

Finally, Clark argues that he was entitled to attorneys' fees because he "effectively" obtained a writ of prohibition when the court declared that the grievance procedures were inconsistent with his inherent power and successfully prosecuted his judicial immunity claim. We decline to address these arguments based on our disposition of the first issue.

In Montana, attorneys' fees generally will not be awarded absent an authorizing contractual provision or statute. Joseph Russell Realty Co. v. Kenneally (1980), 185 Mont. 496, 505, 605 P.2d 1107, 1112. Here, an adequate record has not been made regarding Clark's breach of contract claim and the statutory claims which might provide a basis for an award of attorneys' fees. Thus, the resolution of such claims is premature. We hold that the District Court did not abuse its discretion by denying Clark's motion to amend the judgment to add an award of attorneys' fees. We emphasize that nothing in this opinion should be construed as a

15

comment on the merits of, or to foreclose Clark from pursuing, the breach of contract or statutory claims for attorneys' fees.

Reversed in part, affirmed in part, and remanded for the entry of judgment consistent with this opinion.

_____
                      Justice

We concur:

_____

_____


_____
        Justices

16

Justice James C. Nelson specially concurs.

While agreeing with our discussion of the other issues in this case, I specially concur in the Court's opinion with respect to the issue of judicial immunity. Our opinion on that issue is limited to distinguishing Mead v. McKittrick (1986), 223 Mont. 428, 727 P.2d 517, inasmuch as the District Court grounded its decision in that case, (although it appears that the District Judge favored using the "functional approach" discussed below). Nevertheless, it is my opinion that a dispositive decision handed down by the United State's Supreme Court since Mead, mandates our decision here.

One of the key cases that we relied on in deciding Mead was Forrester v. White (7th Cir. 1986), 792 F.2d 647. We cited that case for the proposition that, "[I]f an employee's duties are intimately related to the functioning of the [judicial] process, then personnel decisions regarding that employee are also part of the process." Mead, 727 P.2d at 519. Following our decision in Mead, the Seventh Circuit's decision in Forrester was reversed on appeal to the United States Supreme Court. See, Forrester v White (1988), 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed. 2d 555.

As in the instant case, Forrester involved a personnel dispute between an employee working for the court and a state court judge. In Illinois, the presiding circuit judge had authority to hire adult and juvenile probation officers, who were removable at his discretion. The respondent state court judge hired Forrester as an adult and juvenile probation officer and, some two years later, promoted her to a position of increased supervisory

17

responsibilities. A year later the judge demoted Forrester to a nonsupervisory position and, a few months after that, he fired her. Forrester sued in federal district court alleging federal civil rights violations. The jury found that the judge had engaged in unlawful sex discrimination and awarded Forrester compensatory damages. Subsequent to the verdict, the judge's motion for summary judgment was granted on the ground that he was entitled to judicial immunity from a civil damages suit. Forrester, 484 U.S. at 222.

On appeal, a divided panel of the Seventh Circuit affirmed. The Circuit Court held that the judge was entitled to absolute judicial immunity, reasoning that Forrester performed functions that were "inextricably tied to discretionary decisions that have consistently been considered judicial acts," and that, absent the judge being able to freely replace the employee, the quality of his own decisions might decline. Forrester, 792 F.2d at 657.

The U.S. Supreme Court rejected the Circuit Court's analysis. While acknowledging that immunity doctrines function to free government officials from the threat of personal liability for actions taken pursuant to their official duties and to encourage such officials to make impartial, objective and imaginative decisions without such decisions being skewed by an excess of caution and by fear of suit, the Court also pointed out that, running though the immunity cases is, "... a "functional" approach to immunity questions...". Forrester, 484 U.S. at 224.

> Under that approach, we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of

18

liability would likely have on the appropriate exercise
of those functions.

Forrester, 484 U.S. at 224.

While observing that judges, as a class, have long enjoyed a comparatively sweeping, if not perfectly well-defined, form of immunity, Forrester, 484 U.S. at 225, the Court, nevertheless, pointed out that, as in the instant case, "[d]ifficulties have arisen primarily in attempting to draw the line between truly judicial acts, for which immunity is appropriate...," (i.e. "... paradigmatic judicial acts involved in resolving disputes between parties who have invoked the jurisdiction of a court") and "... acts that simply happen to have been done by judges." "Here, as in other contexts, immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." Forrester, 484 U.S. at 227. (Emphasis added to last phrase).

In Forrester the Court drew the immunity line between judicial acts and "... the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform," Forrester, 484 U.S. at 227, observing that administrative decisions, while essential to the very functioning of the courts, are not regarded as judicial acts. Forrester, 484 U.S. at 228.

Focusing on the facts in Forrester, the Court then concluded that the state-court judge was acting in an administrative capacity when he demoted and discharged Forrester. "Those acts -- like many others involved in supervising court employees and overseeing the efficient operation of a court -- may have been quite important in

19

providing the necessary conditions of a sound adjudicative system,"
[but] "... were not themselves judicial or adjudicative."
Forrester, 484 U.S. at 229.

Without ruling on the question of whether qualified immunity
might be available to judges who make discretionary employment
decisions, and noting that absolute immunity is "'strong medicine,
justified only when the danger of [officials' being] deflect[ed
from the effective performance of their duties] is very great,'"
the Court held that the state-court judge was not entitled tc
absolute immunity for his decisions to demote and discharge
Forrester. Forrester, 484 U.S. at 230.

In like fashion, the U.S. Supreme Court has on three occasions
applied a "functional approach" in deciding absolute immunity
questions involving prosecutors. See Buckley v. Fitzsimmons
(1993), 61 USLW 4713, 113 S.Ct. 2606, 125 L.Ed.2d 209; Burns v.
Reed (1991), 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547; and
Imbler v. Pachtman (1976), 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d
128.

Accordingly, the functional approach to absolute immunity
questions is firmly rooted in the cases decided by the U.S. Supreme
Court and, in my view, is binding precedent on this Court. Under
the functional approach, it is the nature of the function
performed, not the identity of the actor who performs it, that
drives immunity analysis.

In the instant case, Judge Clark was not involved in
"paradigmatic judicial acts involved in resolving disputes between

20

parties who had invoked the jurisdiction of a court." He was, in fact, performing the very same _functions_ -- supervising court employees and overseeing the efficient operation of a court -- that the Court in _Forrester_ found to be neither judicial nor adjudicative. Judge Clark was acting in an administrative capacity when he disciplined Guest, and, under _Forrester_, he is not entitled to absolute judicial immunity from suit.

On appeal Judge Clark argues that _Forrester_ is inapplicable because § 2-9-112(2), MCA, grants immunity from suit to members of the judiciary where the performance of the official duty at issue is "associated" with "judicial actions of the court." Section 2-9-112(2), MCA. Judge Clark's argument, however, is erroneously premised on his conclusion that disciplining an employee is a "judicial action." Clearly, under _Forrester_, it is not. Such an action is administrative, and acts "associated" with the performance of an administrative action of the court are no more clothed with statutory immunity under Montana law than are such acts clothed with absolute immunity under the functional approach adopted in the federal case law. Accordingly, § 2-9-112(2), MCA, supports, rather than conflicts with, the application of the functional approach.

As with the Court's decision in _Forrester_, I express no opinion on the applicability of the doctrine of qualified immunity to Judge Clark's actions in this case. It is clear, however, that in disciplining Guest, he was performing an administrative, rather than a judicial or adjudicative function, and that under both the

21

functional approach and under § 2-9-112(2), MCA, Judge Clark is not entitled to absolute judicial immunity from suit.

Accordingly, I specially concur with the Court's decision on the immunity issue and concur with its discussion on all other issues.

_____
Justice

Justice Terry N. Trieweiler concurs in the foregoing special concurrence.

_____
Justice

July 12, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Robert Deschamps, III, County Attorney
Michael W. Sehestedt, Dep. County Attorney
Missoula County Courthouse
Missoula, MT 59802

Larry Jones
Attorney at Law
P.O. Box 8108
Missoula, MT 59807

Stacey Weldele-Wade
MILODRAGOVICH, DALE & DYE
P.O. Box 4947
Missoula, MT 59806-4947

Nancy K. Moe
Attorney at Law
P.O. Box 9198
Missoula, MT 59807

Jim Nugent
City Attorney, City of Missoula
435 Ryman
Missoula, MT 59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _A. Gallagher_
Deputy