No. 99-255

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 258

301 Mont. 496

10 P.3d 805

BOARD OF COUNTY COMMISSIONERS OF

LEWIS AND CLARK COUNTY,

Petitioner,

v.

MONTANA FIRST JUDICIAL DISTRICT COURT,

LEWIS AND CLARK COUNTY; HONORABLE

THOMAS C. HONZEL; HONORABLE DOROTHY

McCARTER; AND HONORABLE JEFFREY M. SHERLOCK,

Respondents.

ORIGINAL PROCEEDING

COUNSEL OF RECORD:

For Petitioner:

James H. Goetz and Brian M. Morris, Goetz, Gallik, Baldwin

and Dolan, Bozeman, Montana

For Respondents:

Alexander Blewett III, Hoyt and Blewett, Great Falls, Montana

For Amici Curiae:

David J. Patterson, Missoula, Montana


Leo Berry and Steven T. Wade, Browning, Kaleczyc, Berry and

Hoven, Helena, Montana

Argued and Submitted: June 22, 2000
Decided: September 26, 2000

Filed:


_____


Clerk


Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1 On July 13, 1999, we accepted original jurisdiction over this dispute between the Lewis and Clark County Commissioners and the Judges of Montana's First Judicial District Court. The dispute concerns the county employee status, supervision, and control of the three court reporters for the First Judicial District Court.

¶2 We address the following issues:

¶3 1. Are the First Judicial District's Court Reporters subject to the § 7-5-2108, MCA, requirement that full-time salaried county employees must work a minimum of 40 hours per week, and, if so, what record keeping is required to document hours worked by the Court Reporters, including overtime, annual leave, and sick leave?

¶4 2. Are the Court Reporters subject to the requirement that Lewis and Clark County employees must spend their work week at their "workstation," and, if so, what is the Court Reporters' "workstation"?

¶5 3. Are the District Judges subject to county budgeting deadlines in setting the salaries of their Court Reporters?

¶6 The First Judicial District Court is a state district court of general jurisdiction, the boundaries of which include Lewis and Clark and Broadwater Counties. Honorable Thomas C. Honzel, Honorable Dorothy McCarter, and Honorable Jeffrey M. Sherlock are the duly-elected District Judges of the First Judicial District. All three Judges have offices in Lewis and Clark County; Judges Sherlock and McCarter also alternate every other year in handling Broadwater County's smaller caseload.

¶7 Three court reporters serve the First Judicial District. Each court reporter has been appointed by one of the Judges of the District as allowed by statute.

> The judge of a district court may appoint a reporter for such court who is an officer of the court and holds his office during the pleasure of the judge appointing him. He must subscribe the constitutional oath of office and file the same with the clerk of the court. In districts where there are two or more judges, each judge may appoint a reporter.

Section 3-5-601, MCA.

¶8 Between 1991 and 1997, Lewis and Clark County Commissioners became concerned that the reporting of work hours, sick leave, and annual leave by the First Judicial District's Court Reporters was insufficient. On several occasions, Commissioners and the District Judges discussed this subject, but no permanent resolution was reached.

¶9 In April of 1997, the Montana Legislature amended § 3-5-602, MCA, to increase the amount of salary allowed for district court reporters. The statute, which became effective on October 1, 1997, provides in relevant part:

> (1) Each reporter is entitled to receive a base annual salary of not less than $28,000 or more than $35,000 and no other compensation except as provided in 3-5-604, unless the judge decides to solicit bids for the work performed by the reporter, in which case the salary must be for the amount specified in the bid accepted by the judge. The salary must be set by the judge for whom the reporter works. The salary is payable in monthly installments out of the general funds of the counties composing the district for which the reporter is appointed and out of an

appropriation made to the supreme court administrator as provided in subsection (2).

Section 3-5-602(1), MCA.

¶10 During the 1997 county budgeting process, the Commissioners offered the Judges the choice of either having their Court Reporters classified as county employees subject to the same benefits, regulations, policies, and procedures as other county employees, or having them classified as independent contractors responsible for payment of their own workers' compensation and unemployment insurance. The Judges did not agree to either option. In August of 1997, the County Commissioners adopted a 1997-98 county budget setting the salaries for the three Court Reporters between the newly-adopted statutory limits of $28,000 and $35,000, based upon seniority.

¶11 Between September 18 and 30, 1997, each of the District Judges informed the County Commission that his or her respective Court Reporter's salary for the 1997-98 budget year would be the maximum allowed by statute, $35,000. Accordingly, the budget adopted for 1997-98 by the Commissioners did not include sufficient money to pay the Court Reporters.

> The Commissioners responded to the Judges' September 1997 letters with a letter stating that the Court Reporters' fringe benefits would be discontinued after October 1, 1997. In response, on October 1, 1997, all three Judges signed an order requiring the Commissioners to continue paying their Court Reporters' fringe benefits. The Judges' order required the Commissioners to provide the Court Reporters the maximum salary increase authorized by the 1997 Legislature and "all County benefits they received prior to October 1, 1997, including, but not limited to, health insurance, PERS participation, and all other benefits said court reporters received prior to October 1, 1997." Since October 1, 1997, the Commissioners have complied with the Judges' order under protest.

¶12 The County Commissioners appealed the Judges' October 1, 1997 order to this Court. We dismissed the appeal on grounds that the appropriate remedy would be a petition for an extraordinary writ. *In re District Court Budget Order Dated October 1, 1997*, 1998 MT 4, 287 Mont. 137, 952 P.2d 427.

¶13 The Commissioners then filed this action requesting a writ of supervisory control or other appropriate writ. We accepted jurisdiction and appointed Honorable Thomas A.

Olson, District Judge for Montana's Eighteenth Judicial District, to hold a hearing and make findings of fact for the Court's use. The Montana Court Reporters Association was granted permission to intervene, and the Montana Association of Counties appeared as an *amicus curiae*.

¶14 Judge Olson held an evidentiary hearing in January 2000, after which he filed detailed findings of fact. The parties and the intervener rebriefed, and oral argument was heard in June 2000.

Background--legal context

¶15 Our attention has been directed to previous decisions of this Court relating to supervision and control of state court employees, and to a Montana Attorney General Opinion on the subject. The first decision to which we have been cited concerned an attempt by the executive branch of state government to regulate a "court reporter" for the Montana Supreme Court. *See State ex rel. Schneider v. Cunningham* (1909), 39 Mont. 165, 101 P. 962. Relying on the constitutional provision providing for separation of powers among the three branches of government, this Court stated in *Schneider* that the power to select and appoint, set qualifications for, and fix compensation of court reporters for the Montana Supreme Court must necessarily be vested in the judiciary.

> [I]t is manifest that the power to select the proper employees could not with propriety be vested elsewhere than in the court itself; and it is equally manifest that the power to say whether it may or may not be necessary to have assistance, and what the qualifications of the assistants shall be, may not be vested elsewhere. If the power of appointment exists at all, it is a necessary power of the court, and, since the qualifications of the individual desired is determined in a measure by the amount of compensation paid his services, the power to fix the compensation is also a necessary power. In short, the court has the inherent power to select and appoint its own necessary assistants and make the compensation due for their services a charge against the state as a liquidated claim.

*Schneider, 39 Mont. at 171, 101 P. at 964.*

¶16 Not long thereafter, the Court acknowledged that in spite of the separateness of the three branches of government, "[t]here is no such thing as absolute independence" of the branches. *State ex rel. Hillis v. Sullivan* (1913), 48 Mont. 320, 330, 137 P. 392, 395. In

*Hillis*, a court attendant who had been appointed by a district judge filed a claim with this Court for compensation for his services. This Court dismissed the claim on grounds that the court had made the appointment without a showing that it had been necessitated by the failure of the county sheriff to perform those duties, as prescribed by statute. In so doing, the Court stated:

> The protection of the judicial department from encroachment is not to be sought in extravagant pretensions to power, but rather in a firm maintenance of its own clear authority coupled with "a frank and cheerful concession of the rights of the co-ordinate departments." (*People ex rel. Smith v. Judge*, 17 Cal. 547.)

*Hillis*, 48 Mont. at 330, 137 P. at 395.

¶17 While *Schneider* and *Hillis* were decided under Montana's 1889 Constitution, our present Constitution also includes a provision for separation of powers:

> **Separation of powers.** The power of the government of this state is divided into three distinct branches-legislative, executive, and judicial. No person or persons charged with the exercise of power properly belonging to one branch shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.

Art. III, Sec. 1, Mont. Const.

¶18 In *Board of Com'rs of Flathead County v. Eleventh Judicial Dist. Court* (1979), 182 Mont. 463, 597 P.2d 728, this Court was presented with an occasion to interpret the separation of powers clause of the present Montana Constitution. The case arose from a dispute between county commissioners and district judges regarding the funding of a position of director of family court services. The county commissioners brought the action to confirm their authority to refuse to fund the position after being ordered to do so by the district court. This Court determined that constitutional interpretation was not necessary because under the circumstances, the commissioners did not have authority to refuse to fund the position. The Court then stated:

> We admonish the District Courts to use the statutorily implied funding power we recognize here with judicious restraint. The constantly changing demands upon the judicial system must be worked out in a spirit of independent identity and balance

among legislative, executive, and judicial branches of government by reasonable interaction tempered with respect for the limitations of their power.

*Flathead County, 182 Mont. at 470-71, 597 P.2d at 732.*

¶19 The County Commissioners also draw our attention to a 1981 opinion by the Montana Attorney General. In response to a series of questions about the county employee status of district court personnel, the Attorney General opined that a district court employee who is paid by the county and receives fringe benefits therefrom is a county employee; that an employee who receives a county payroll check must abide by the county's personnel policies; and that district court employees are subject to the statutory requirement that full-time salaried county employees work forty hours per week. The Attorney General further opined that requiring district court employees to abide by county policies and regulations is not an undue interference upon the judicial branch, but is necessary to the county for the effective administration of county business. The Attorney General tempered his opinion, however, with the following comments:

> Although I make this observation about the balance of interests between the court and the county, in regard to district court employees abiding by county rules and policies, I must conclude that to expressly define the scope of judicial authority in relation to that of the county is inappropriate for an Attorney General's opinion. That question would be more appropriately disposed of either by an understanding between the individual judge and the county commissioners, or by a judgment in a court of proper jurisdiction.

39 Mont. Op. Atty. Gen. No. 38.

¶20 Finally, our attention is directed to *Clark v. Dussault* (1994), 265 Mont. 479, 878 P.2d 239. There, a justice of the peace (JP) objected to the holding of a grievance hearing before the local county commission concerning his disciplinary suspension of the justice court office manager. The district court ruled that the JP need not comply with the grievance procedures, based on the court's conclusion that those procedures would interfere with the JP's inherent authority to ensure the proper functioning of the justice court. This Court disagreed:

> The separation of the government into three great departments does not mean that there shall be "no common link of connection or dependence, the one upon the other

in the slightest degree" [citation omitted]; it means that the powers properly belonging to one department shall not be exercised by either of the others [citation omitted].

*Clark*, 265 Mont. at 487, 878 P.2d at 243-44 (quoting *Hillis*, 48 Mont. at 330, 137 P. at 395).

¶21 Pointing out that the county commissioners had independently hired the office manager, the Court ruled that such a grievance hearing did not violate the separation of powers doctrine or constitute an exercise of authority belonging to the judicial branch. *Clark*, 265 Mont. at 487, 878 P.2d at 244.

¶22 Resolution of the issues here presented lies in the above context, at the core of our tripartite system of government.

## Issue 1

¶23 Are the First Judicial District's Court Reporters subject to the § 7-5-2108, MCA, requirement that full-time salaried county employees must work a minimum of 40 hours per week, and, if so, what record keeping is required to document hours worked by the Court Reporters, including overtime, annual leave, and sick leave?

¶24 Section 7-5-2108, MCA, provides: "All full-time salaried county employees shall work a minimum of 40 hours per week." Judge Olson found that "[b]y statute and by tradition, court reporters in Montana are county employees and thereby entitled to full fringe benefits." Although the record indicates that there are exceptions to that general rule (such as Judge Purcell's court reporter in Silver Bow County, who has been hired as an independent contractor), that finding has not been challenged. We conclude that where, as in the First Judicial District, court reporters are treated as full-time salaried county employees, they are subject to the statutory 40-hour workweek requirement.

¶25 The County Commissioners point out that an employer must record the hours worked by its employees. "If the employer fails to record the employee's hours, the employee's records may be used to determine the amount of time worked." *Holbeck v. Stevi-West, Inc.* (1989), 240 Mont. 121, 125-26, 783 P.2d 391, 394. The County Commissioners assert that the Court Reporters are therefore subject to the same record keeping requirements concerning their hours of work as are other county employees.

¶26 But as the Judges point out, the job of a district court reporter is different from that of most other county employees in some fairly significant ways. The court reporters' job is in large part delineated by statute. And, under § 3-5-601, MCA, court reporters for district courts are appointed by and serve at the pleasure of the district judge. Each Montana court of record has statutory rulemaking authority concerning "the government of its officers." Section 3-1-112, MCA. Court reporters are, without question, "officers" of the court. Further, although they are not elected county officials, district court reporters are required to subscribe the oath of office required of elected Montana officials. Section 3-5-601, MCA.

¶27 Section 3-5-603, MCA, provides that the court reporter will provide services under the direction of the judge. In that regard, Judge Olson found:

> Most judges indicate that their work schedule varies significantly, and that at times the court reporter is expected to work or travel well before and after regular office hours. Apparently, most reporters are expected to absorb this varying work schedule as part of being a salaried court employee. . . .
>
> . . . .
>
> The court reporters in Lewis and Clark County routinely work overtime, i.e., they work outside the normal 8:00 to 5:00 workday.

In short, the evidence presented to Judge Olson establishes that a court reporter's schedule is subject to change and does not fit into any pre-ordained work schedule.

¶28 District court reporters in Montana are also required, as an outside-the-courtroom statutory duty, to furnish complete or partial printed transcripts of cases heard, upon request of a party to the case or of the district judge. *See* § 3-5-604, MCA. As Judge Olson found, charging for these transcripts is a matter controlled by statute. *See* § 3-5-604, MCA.

¶29 We here dispose of what we conclude is a red herring issue concerning overtime. The County Commissioners have raised the specter of their possible liability under the Fair Labor Standards Act (FLSA) for overtime pay to the Court Reporters for time spent on transcript preparation work in their homes. No allegation has been made, however, by the Court Reporters that they are entitled to any such overtime pay. We note, too, that the FLSA contains specific provisions relating to court reporters, exempting certain of their

time spent on transcript preparation from hours worked pursuant to the FLSA. *See* 29 U.S.C. 207(o).

¶30 After reviewing the above considerations in their legal context, we conclude that while full-time district court reporters must work forty hours per week and their employer must record their hours, any method used to fulfill those requirements must comport with the judges' authority to control their assistants. Allowing the County Commissioners to enforce county personnel policies upon the Court Reporters to which the Judges object would infringe upon the Judges' right to control their assistants. We hold that reasonable record keeping is required to document hours worked by the Court Reporters, including overtime, annual leave, and sick leave, and that such reasonable record keeping shall be as determined by the District Judges.

## Issue 2

¶31 Are the Court Reporters subject to the requirement that Lewis and Clark County employees must spend their work week at their "workstation," and, if so, what is the Court Reporters' "workstation"?

¶32 The parties are "at loggerheads" on the county's workstation policy. The County Commissioners seek to enforce the county's personnel policy that all county employees, including the Court Reporters, must work at the county-designated workstations, subject to each Judge's paramount authority to assign his or her Court Reporter to a different location for court business. The Court Reporters want to work at home when their presence is not required in the courtroom, and the Judges have acquiesced in that preference.

¶33 In considering the workstation issue, we must remain cognizant of the unique job requirements of a court reporter for a district court. As the Commissioners have conceded and Judge Olson found, numerous county personnel requirements cannot be applied to the Court Reporters because they would conflict with statutes specifically relating to district court reporters. For example, collective bargaining agreements, continuity of service provisions, provisions regarding probationary periods for new and promoted employees, and demotion and lay-off provisions are among county personnel requirements which the parties to this action agree are not applicable to the Court Reporters.

¶34 A further complication is presented by the fact that Montana's First Judicial District,

like many of the state's judicial districts, encompasses more than one county. If county personnel rules were to be applied, a question would arise as to which county's personnel rules would apply to court reporters in multi-county judicial districts such as the First Judicial District.

¶35 A district court reporter's statutory duty to take stenographic notes at proceedings of the court is arguably the reporter's principal duty.

> Each reporter must, under the direction of the judge, attend all sittings of the court and take full stenographic notes of the testimony and of all proceedings given or had threat except when the judge dispenses with the reporter's services in a particular cause or with respect to a portion of the proceedings therein.

Section 3-5-603, MCA. As part of this duty, district judge recusals and substitutions require judges, and, in many cases, their court reporters, to travel outside their judicial districts. Required presence at an in-county assigned workstation would, at those times, clearly conflict with the duty to attend court sittings under the direction of the judge.

¶36 A court reporter's duties also include, as noted above, preparing transcripts of proceedings at the request of parties to the case or the judge. In that regard, Judge Olson found:

> The matter of the location of court reporters when they are not engaged in actual courtroom work . . . seems to be a matter of tradition and varies from jurisdiction to jurisdiction. It is difficult to discern whether there is a "majority rule" because not all judges submitting affidavits in this case directly addressed that issue. It appears, however, that the most significant number of judges, like those in Lewis and Clark County, do not require a reporter to keep regular hours when not doing courtroom work. The reporters are present at the courthouse when actively engaged in the reporting of a case; transcripts are usually completed at offices located within the reporter's home.

¶37 In consideration of all of the above, we conclude that any mandatory location of work for the Court Reporters set by anyone but the District Judges would interfere with the necessary flexibility of the District Judges. The loggerheads claimed by the parties are averted by acknowledging that the Judges have authority to assign the Court Reporters to multiple locations as their "workstations"-e.g., the Court Reporters' homes for

transcription work, if the Judges deem to so assign. We hold that the Court Reporters' "workstation" is wherever they are required to be to perform their duties for the Judges for whom they work. Issue 3

¶38 Are the District Judges subject to county budgeting deadlines in setting the salaries of their Court Reporters?

¶39 Counties are required to approve and adopt their final budgets "on or before the second Monday in August." Section 7-6-2317(2), MCA. Lewis and Clark County met this statutory deadline in 1997 when the County Commissioners set the salaries of the Court Reporters with a proposed phase-in, over a period of years, to the maximum amount statutorily allowed. The October 1, 1997 court order signed by the District Judges, however, did not comport with the statutory deadline.

¶40 Although courts have authority to direct funding under some circumstances, we have held that this inherent power is limited to emergency situations and where the normal processes of funding are of no avail. *Butte-Silver Bow Local Gov't v. Olsen* (1987), 228 Mont. 77, 80, 743 P.2d 564, 566. The flipside of that holding is that county budget deadlines, in general, apply to judges.

¶41 Therefore, only if an emergency situation was present were the District Judges within their authority when they issued their October 1, 1997 order imposing the maximum statutory salaries for the Court Reporters. The County Commissioners maintain that any "emergency" was a result of the Judges' failure to act to raise the Court Reporters' salaries in a timely manner. They maintain there is no evidence to support Judge Olson's finding that "clearly the Commissioners were on notice that the Judges expected their court reporters to be paid at the newly enacted statutory maximum of $35,000."

¶42 Regardless of the truth of that contention by the Commissioners, Judge Olson further found: "[I]t is obvious that a threat to remove fringe benefits, including health insurance coverage, from the court reporters created an emergency to which the Judges had to respond." That finding is not challenged, and the threat to remove fringe benefits was not a direct and unavoidable result of any action or failure to act by the Judges. In this age of high health care costs, it is understandable that the loss of employment benefits including health insurance coverage represents a serious matter, and even an emergency situation. Therefore, and based upon the above finding, we conclude that an emergency situation justified the Judges' October 1 order.

¶43 Since 1997, the amount of the Court Reporters' salaries has not been an issue, because the maximum statutory amount has been budgeted for each Court Reporter each year. Therefore, for those subsequent years, no budgeting deadline issue is present.

¶44 Unwillingness of county commissioners to recognize the reality of a district court's function in fulfilling constitutional mandates leads to nothing but trouble. A prime example is the County Commissioners' "workstation" argument. Moreover, if the County Commissioners' logic on that argument were to be applied across the board, a county road supervisor would not be permitted to leave his "workstation" at an office desk to travel around the county and supervise crews performing road work. On the other hand, in matters such as budgeting, district court judges must recognize that they are part of a larger governmental structure. It is unfortunate that this dispute found its way through the court system all the way to this Court.

/S/ J. A. TURNAGE

We concur:

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY