IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 03-374

IN RE PETITION FOR REVISIONS AND ADOPTION )
OF THE MONTANA JUDICIAL BRANCH PERSONNEL )            O R D E R
PLAN AND POLICIES.                                                    )

On June 6, 2003, Ed Smith, Clerk of the Montana Supreme Court, filed a Petition for the Revision and Adoption of the Montana Judicial Branch Personnel Plan and Policies. The Petition purports to be filed on behalf of Mr. Smith, personally in his capacity as Clerk of this Court, and also on behalf of District Court Judges Thomas M. McKittrick, Julie Macek, Dirk M. Sandefur and Katherine M. Irigoin. Substantively, the Petition requests that this Court amend the Montana Judicial Branch Personnel Plan and Policies, adopted July 1, 2003, ("Plan") to exclude the personal staff of the state elected judicial branch officials from the recruitment, classification and grievance provisions of the Plan. The Petition asserts that this Court alone has the authority and inherent power to enact a personnel plan that affects the judicial branch employees.

In 2001, the Montana Legislature passed Senate Bill 176, commonly referred to as the "State Assumption Bill." The Bill vested the Montana Supreme Court with the responsibility of adopting a plan for the personnel administration for employees of the judicial branch including "classification and pay, recruitment and selection, performance appraisal, training, and promotion." Section 3-1-130, MCA. The legislation provided that the plan would exclude certain employees, including the Clerk of this Court. When the Court ultimately adopted the Plan, the Court included Policy No.: Section 100 which provided, in part, that the Judges and Justices shall retain their inherent power to select and hire their necessary assistants. The Court further exempted additional employees in the judicial branch from the Plan, including law clerks on a temporary appointment. *See* Policy No.: Section 100, 2.0.

In the fall of 2002, prompted by a vote taken at the annual Montana Judges Association meeting, the Association sought a sponsor to introduce legislation at the upcoming legislative session, seeking to amend § 3-1-130, MCA, to expand the number of legislatively exempt employees to include the personal staff of the elected judicial branch

officials. Legislation to this effect was introduced and passed but was ultimately vetoed by Governor Judy Martz.

The Petition before us seeks to amend the Plan to the extent that the provisions regarding recruitment, classification and grievance provisions shall not apply to the personal staffs of the state elected judicial branch officials, including the Clerk of the Montana Supreme Court. At the outset, we observe that the Petition has not been signed by any Judges or Justices nor by any attorney stating that he or she is representing any Montana Judges or Justices in a representative capacity. Rather, the Petition is signed by Mr. Ed Smith who is Clerk of this Court. Mr. Smith is not a licensed attorney and cannot represent other individuals in a representative capacity. Therefore, the Petition, as it applies to the Judges and Justices, is denied without prejudice.

As the Petition relates to employees of the Clerk of the Montana Supreme Court's office, we conclude the Petition is well taken and has merit. The Clerk of the Montana Supreme Court is a state-wide elected official. The Clerk has been specifically exempted from the Plan. Section 3-1-130, MCA. In addition, the Deputy Clerk of Court is appointed by the Clerk of Court, serves at the pleasure of the Clerk of Court, and is not subject to the Plan. Sections 3-2-406 and 2-16-213(1), MCA; *Conboy v. State* (1985), 214 Mont. 492, 693 P.2d 547. Excluding the Clerk and the Deputy Clerk, there are five remaining employees of the Clerk of the Supreme Court's office. Historically, the Clerk of the Supreme Court, as a state-wide elected official, has exercised his or her authority to recruit, hire, classify, establish levels of pay, discipline and in all respects manage the employees of the office. The Clerk's office is funded by the legislature with a discreet budget to carry out the functions of the office. We conclude that we improvidently included these employees in the recruitment, classification, pay and grievance provisions when we recently adopted the Plan. After further consideration, it appears to us that the Clerk of the Supreme Court's office would be better served by returning the few employees in the Clerk's office to the direct supervision and control of the Clerk of this Court in all respects. Moreover, the five employees of the Clerk's office, all of whom have considerable tenure, have expressed their dissatisfaction with our attempt to classify their positions in the Plan.

Article VII, Section 1, of the Montana Constitution vests judicial power of the state

in one Supreme Court, district courts, justice courts and such other courts as provided by law. Article III, Section 1, mandates the separation of powers between the three branches of the government. This Court has consistently recognized the inherent power of the judiciary when dealing with personnel issues that impact directly on the smooth and efficient operation of the courts. *See Mead v. McKittrick* (1986), 223 Mont. 428, 727 P.2d 517; *County Com'rs v. First Jud. Dist. Court*, 2000 MT 258, 301 Mont. 496, 10 P.3d 805. Therefore,

IT IS HEREBY ORDERED THAT said Petition inasmuch as it applies to the employees of the Clerk of the Montana Supreme Court's office is GRANTED. The Judicial Branch Personnel Plan and Policies shall be amended forthwith in that the recruitment, classification, pay and grievance provisions shall not apply to the employees of the Office of the Clerk of the Montana Supreme Court. The remaining provisions of the Judicial Branch Personnel Plan and Policies shall continue to apply to the employees of the Office of the Clerk of the Montana Supreme Court.

IT IS FURTHER ORDERED THAT the Petition for Revision and Adoption of the Montana Judicial Branch Personnel Plan and Policies, inasmuch as it applies to District Court Judges McKittrick, Macek, Sandefur, and Irigoin and other elected judicial officials, other than the Clerk of the Montana Supreme Court, is DENIED WITHOUT PREJUDICE;

DATED this 3rd day of December 2003.

/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON

3

Justice Jim Rice concurring in part and dissenting in part.

I concur with the Court's granting of the petition with regard to the office of Clerk of the Montana Supreme Court.

I dissent from the Court's denial of the petition with regard to the district court judges. The Court denies the petition on the ground that it was signed by Mr. Ed Smith, who the Court indicates cannot represent the other petitioners. However, it should be remembered that the request before us does not seek judicial relief, but, rather, revision of the policies of the judicial branch. This is an internal operational matter which falls within our state administrative responsibilities. A petition or other formal proceeding is not requisite for such policy revisions. We can revise our internal policies via petition, letter, phone call or even without a request at all. I would do so.

/S/ JIM RICE

Justice John Warner concurring in part and dissenting in part.

I agree that the present petition, as it applies to the named District Judges, should be denied without prejudice. Any petition requesting that employees of the judicial branch who work directly for a district judge be excluded from the Judicial Branch Personnel Plan and Policies should be brought to this Court by the District Judges themselves. The present petition does not give any indication that all, or even a majority, of the 42 District Judges desire that employees be exempted from the Judicial Branch personnel policies. Nor does it tell us how many or what specific employees should be considered for exemption.

I disagree that the employees of the Clerk of the Supreme Court, other than the Deputy Clerk, should be excluded from four critical areas of the Judicial Branch Personnel Plan and Policies. Exempting such employees is not in accord with either the legislative direction to cover all employees of the branch with a personnel policy, nor is it a good management decision.

Historically, the various employees of the judicial branch of government were under the supervision of the Supreme Court, District Judges, and the Clerk of the Supreme Court. There was no overall personnel policy that applied to employees of the Judicial Branch. The employees of the Clerk of the Supreme Court work for the Judicial Branch of Montana's government. They are assigned to the office of the Clerk. Such employees have different duties, but work for the courts the same as the judicial assistants, law clerks, court reporters, and juvenile probation officers who are assigned to the Supreme Court, the District Courts, the Law Library and the Court Administrator's Office. Such people are competent and valuable. However, no reason is shown to set them apart from other branch personnel.

With the passage of SB 176, administration of the Judicial Branch was unified. Some

5

argue that such was a mistake, and some that it is a substantial improvement that was a long time coming. However, there is no doubt that SB 176, a part of which is § 3-1-130, MCA, changed the makeup of the Judicial Branch. It made the historical fact that the employees of the Clerk of the Supreme Court were not covered by the Supreme Court personnel policy irrelevant. The change wrought by SB 176 effects the entire branch. It is the clear legislative directive that the Clerk's employees are to be encompassed within the personnel policies adopted by the Supreme Court. Considering the directive of § 3-1-130(1), MCA, it is doubtful that the Clerk can promulgate personnel policies applying only to his office that do not also have to be adopted by the Supreme Court.

The Clerk does not have budgetary autonomy. His office is one of six programs in the Judiciary's Budget. 3 *Legislative Fiscal Report*, *2005 Biennium*, Legislative Fiscal Division, (June, 2003).[1] There appears no reason to have separate personnel policies for different budgetary programs.

Not only is the unique exemption of five employees from four critical areas of the branch personnel policy directly contrary to legislative direction, it is a bad business decision. We have done the Clerk's valuable employees a distinct disservice. We have now placed the Clerk, the affected employees and this Court in a position where there are no guidelines whatever from which to solve most problems, or answer many questions, that might arise out of the terms and conditions of these persons' employment. This Court, as

---

[1]    There are six "programs" in the Judiciary's budget: Supreme Court Operations, Boards and Commissions, Law Library, District Court Operations, Water Courts Supervision, and the Clerk of the Supreme Court. The Workers' Compensation Court is attached to the Department of Labor for administrative purposes.

6

the business head, or board of directors if you will, of the Judicial Branch of government should strive to make the branch's personnel policies, as well as other administrative requirements, as consistent and uniform as is commensurate with an efficiently run organization. We should not create separate enclaves or departments that have entirely different policies and procedures unless justified by compelling business reasons. I see no such reasons here.

If the Clerk or his employees are dissatisfied with the classification plan that determines their rate of pay, a request to change it could be discussed and considered. If the Clerk would have petitioned for some other amendment to the branch policies that applied particularly to his office, and if he had given the reasons therefore, this Court might consider such request and perhaps grant all or part thereof. But, a near blanket exemption from the Judicial Branch personnel policy is not warranted.

I dissent.

/S/ JOHN WARNER

Chief Justice Karla M. Gray, dissenting.

I cannot dissent strongly enough from the Court's order in this original proceeding. Under the guise of addressing an innocuous-sounding petition to revise our Judicial Branch personnel-related plans and policies, the Court effectively amends § 3-1-130, MCA, a statute duly enacted by the 2001 Montana Legislature, by judicial fiat. Indeed, it appears to strike as unconstitutional--without ever saying the words--a portion of § 3-1-130, MCA, which defines the judicial branch employees to which our personnel policies do and do not apply. Can the Court exercise inherent judicial authority? Certainly. In theory, at least, the Court can do so whenever it pleases. When it chooses to do so, however, I believe it has an obligation to present a supportable legal analysis. The Court has not met that burden here. Should we exercise such authority in this case? Certainly not, especially under the circumstances presently before us. Finally, if the Court is going to resolve an issue which touches directly on a statute, it ought to do so in an opinion, rather than a nonpublished order, so that the law relating to the statute can be researched and "discovered."

It is important to set forth the background to this cause number filed by the Clerk of this Court. As part of the state assumption legislation enacted in 2001, the Legislature enacted what was later codified as § 3-1-130, MCA. That statute directs this Court to adopt personnel, classification and pay policies for all employees of the judicial branch except justices, judges, this Court's administrator, the state law librarian and the clerk of this Court. As we progressed toward accomplishing this directive, the Clerk contacted members of the Court to argue that the Legislature had intended to exclude all of the employees in his office. We reviewed the materials he provided and did not agree. We also--in that regard--briefly

8

discussed the "inherent judicial authority" approach to the statutory directive, and determined to proceed in accordance with the statute.

Subsequently, the Montana Judges Association--of which the Clerk is not a member--decided to approach the Legislature to request that their *confidential personal* staff (not including court reporters) be exempted from the statutory definition of judicial branch employees subject to the branch's personnel, classification and pay policies. Among the justifications discussed at the meeting were that other elected officials have confidential personal exempt staff and judges must have such staff and be able to fire them without cause.

The proposed legislation subsequently was introduced, significantly broadened to include exemptions for all the employees in the Clerk's office (in addition to the Deputy Clerk, who is exempt pursuant to § 3-2-406, MCA). The Clerk testified that, as a statewide elected official, he was entitled to exempt staff and that his employees were of the same confidential personal nature as the statutorily-authorized exempt staff for executive branch officials. With the support of its proponents, the bill was amended to clarify that any staff made exempt pursuant thereto still would be subject to the branch's pay plan. Ultimately, the Governor vetoed the bill and the Legislature did not override the veto.

The Clerk then proceeded down parallel courses. As he had agreed to do at the end of the legislative session, he had his staff participate in the exact same process we utilized for promulgating our classification and compensation plan for all nonexempt judicial branch employees. He also petitioned this Court to revise our personnel, classification and pay policies to exempt all of his employees. As the Court properly notes in this latter regard, he also purported to act on behalf of certain district court judges, but cannot do so as a matter of law since he is not an attorney. The Clerk's filed petition, in its entirety (not counting the

9

caption and signature line), is one and one-half pages long. It cites generally to Article VII, Section 1 of the 1972 Montana Constitution, which vests judicial power in this Court, and Article III, Section 1, which mandates the separation of powers between the three branches of government. The Clerk provides no legal analysis or other citation to legal authority. Not surprisingly perhaps, the petition--since it purports to merely request a change in our branch's policies, rather than a judicial repudiation of a legislative enactment--was not served on any other person or party.

The Court's order states that, historically, the Clerk has had authority to do whatever he desired with regard to his employees. While this may be true, the same could be said of many other "historic" matters in the judicial branch which have been changed by the state assumption legislation. Notwithstanding, the Court grants the petition, relying on the "inherent judicial power" doctrine set forth in *Mead* and *County Commissioners*. Those cases are not applicable for a number of reasons, and certainly do not support the notion that the Clerk's employees are somehow different and "special" vis-à-vis other judicial branch employees, especially those who do the same type of work.

Before addressing the cases relied on by the Court, I believe it is important to point out a number of anomalies with regard to the Clerk's position which have bearing--or should have bearing--on this matter. First, the Clerk is not a judicial officer. Second--and importantly--unlike justices, district court judges and all statewide, elected executive branch officials, the Clerk's position is not a constitutional one. In other words, the position is a statutory one, elected statewide and on a partisan basis as a historic carryover. *See* § 3-2-401, MCA. Likewise, the duties of the office are statutorily limited by §§ 3-2-402 through -404, MCA; the duties are mostly record keeping and fee collecting in nature, and also

10

include "perform[ing] other duties as may be required by law and the rules and practice of the supreme court." *See* § 3-2-402(1)(g), MCA.  Stated differently, the Clerk's duties--and those of his employees--are prescribed by statute and are, as one might expect from the title of the position, largely clerical.  This is not a position with judicial power, discretion or authority and, therefore, is neither qualitatively nor quantitatively similar to the constitutional positions filled by justices and district court judges.  At the bottom line, the Legislature created the Clerk's position and limited its duties.  On that basis alone, it is clear that the Legislature has the authority, under Article III, Section 1 of the 1972 Montana Constitution, to require the employees of that office to be included in the judicial branch's personnel, classification and pay plans and policies.

Moreover, it strikes me that, by going to the 2003 Legislature for statutory "relief," the Clerk conceded the question of "inherent judicial authority" in this matter.  The Court having initially rejected the exercise of inherent judicial authority in adopting the plans and policies as directed by § 3-1-130, MCA, and the Clerk having subsequently--but unsuccessfully--sought relief through the appropriate avenues, I cannot understand how the Court can sweep all that aside and now assert "inherent judicial authority."

Furthermore, the fact is that "exempt" staff for other elected public officials are, indeed, *confidential personal* staff.  Exempt staff generally are policy advisers, deputy officials, high level management positions, executive assistants and other necessarily *confidential* staff.  These are the kinds of confidential personal staff  to which other elected public officials are entitled.  In the present case, as mentioned above, the Deputy Clerk is--by separate statute--exempt personal staff of the Clerk and rightly so.  The Deputy Clerk generally is the hands-on manager of the office and, in the event of the Clerk's absence,

11

disability or vacancy, is the person mandated by § 3-2-406, MCA, to perform the duties of the office.

The remaining five employees of the Clerk's office are not exempt by statute (unlike all other exempt staff throughout state government). They also are not entitled to exempt status because--while valuable employees of long standing--they are clerical staff with statutorily circumscribed duties. The Clerk has not asserted otherwise in his petition or in any communication with the Court. In fact, no information before us supports clerical staff with these kinds of duties being confidential personal staff anywhere in Montana government. Their loyalty ought to be to the jobs they perform, not to the Clerk. The Clerk apparently wants to be able to fire them at will but, in the meantime, pay them at whatever salary level he thinks is appropriate (notwithstanding his agreement at the Legislature to comport with the branch's pay plan). No other employee in the judicial branch, except those expressly exempt pursuant to § 3-1-130, MCA--or in all of state government, except pursuant to statute--is in such a position. Under state assumption, and even ignoring § 3-1-130, MCA, I believe it is inappropriate to place additional judicial employees in such a position.

I recognize that the Clerk's clerical staff are not satisfied with their recommended placement within the judicial branch's classification and pay plans. I daresay the same is true of many other employees in our branch and in the other two branches of government. However, their displeasure over compensation matters does not relate to the issue of whether they are, or should be, exempt staff. Apparently, while already paid substantially more than that recommended by the same method we adopted for all other branch employees, they want to receive biennial raises via the Clerk's "budget" (which, in any event, is a simplistic

12

way to look at the Clerk of Court "program" within the overall judicial branch's budget, for which the Chief Justice is the ultimate approving authority), while other judicial branch employees who are at or above the maximum for their (often lower) pay grades are facing freezes until employees within their classification "catch up." It was not, and is not, possible to promulgate branchwide policies and grade/pay plans based on individual employee dissatisfaction. No other branch of government does so.

Nor are the Court's passing citations to *Mead* and *County Commissioners* supportive of its statement in this particular case that we have "consistently recognized the inherent power of the judiciary when dealing with personnel issues that impact directly on the smooth and efficient operation of the courts." Both were pre-state assumption cases and, while many in the judicial branch remain adamantly opposed to state assumption, state assumption is the law with which we must work--unless the Court plans more assertions of inherent judicial authority. Furthermore, in neither case did the Court implicitly amend a duly enacted statute by judicial fiat.

In *Mead*, the issue was whether a judge and county commissioners acting pursuant to a judicial action were entitled to judicial immunity pursuant to § 2-9-112(1), MCA, for discharging the "personal secretary" of the judge's predecessor. We stated, in the pre-assumption context, that they were entitled to such immunity. *Mead*, 223 Mont. at 430-31, 727 P.2d at 518-19. There is no immunity issue before us in this cause number.

In any event, the key portions of *Mead* address the fact that the personal secretary was a "key court employee." We stated that "[t]he efficient and proper administration of justice requires that judges have personal secretaries with whom they can work professionally and *confidentially*. As such, the personal secretary occupies a distinct and unique status among

13

district court employees." *Mead*, 223 Mont. at 431, 727 P.2d at 519 (emphasis added). To the extent *Mead* has any application whatsoever to this proceeding, it certainly does not support making all of the Clerk's staff exempt employees, when their primary responsibilities are to intake, docket and file public documents and respond to routine inquiries. Again, and with all due respect to the employees at issue, they do not occupy a confidential or "distinct and unique status."

Nor does *County Commissioners* relate in any way to this proceeding or provide support for the Court's actions here. That case involved issues relating to the extent to which court reporters were subject to judicial authority or county authority. While we certainly discussed the separation of powers and the power of the judiciary to control certain aspects involving court employees, we did so in the context of various statutes applicable to, for example, court reporters, county budgets and other employment requirements. *County Commissioners*, ¶¶ 15-22. The court reporter statutes at issue in that case no longer exist. Court reporters are part of the state assumption legislation and are no longer county employees; nor are they exempt personal staff. Court reporters' pay, benefits and other work requirements are now subject to statute, the grade/pay plan adopted by this Court, or contract. *See, e.g.,* §§ 3-5-601, MCA, *et seq*.

Moreover, it is not altogether clear precisely which portions of our recruitment, classification, pay and grievance provisions will not apply to the Clerk's employees. Presumably, the Clerk will do his own advertisements, screening and the like in the event of staff vacancies. Presumably, other statewide policies concerning exempt personal staff will apply. The down side to all this, however, is that these five employees--with their combined 79 years of service in the judicial branch--lose employment rights and job security.

14

They can be discharged at any time by either the present Clerk or a future clerk, without cause and without recourse. While some of the employees may believe they never had such rights and security, it is clear that two of them--one of whom worked in the Court Administrator's office and one of whom worked for the State Law Librarian--did have employment rights prior to joining the Clerk's staff. By its action here, the Court simply negates those pre-existing rights by the stroke of a pen. I question whether the Court's action in that regard will withstand legal scrutiny in a future case. Mostly, though, I am shocked that a Court which generally is so protective of employment rights would withhold those rights from any permanent employees of our branch.

Moreover, the Court's open invitation to district court judges and, I suppose, to itself to petition for similar revisions for all or portions of their staffs is truly unfortunate. The ultimate result, I fear, is that rather than using state assumption to forge a better branch by equalizing and standardizing matters wherever possible--and especially regarding the critical elements of how we treat our employees--the Court is creating internal divisions of huge magnitude. Favoritism for some employees--or seeming favoritism which, however, also guts employment rights--is a sure road to discord and upheaval within our branch of government.

With the exception of the Court's conclusion that the Clerk cannot request relief on behalf of certain district court judges, I dissent from the entirety of the Court's order.

/S/ KARLA M. GRAY

15