# FILED

08/09/2028
09/09/2018

Bowen Greenwood
*en/Greenwood*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: AC 17-0694

Amy Eddy, District Judge
Department No. 1
Flathead County Justice Center
920 South Main Street, Suite 310
Kalispell, Montana 59901
(406) 758-5906

## IN THE ASBESTOS CLAIMS COURT OF THE STATE OF MONTANA

| | |
|---|---|
| IN RE ASBESTOS LITIGATION, | Cause No. AC 17-0694 |
| *Consolidated Cases.* | ORDER RE: PLAINTIFFS' MOTION FOR DEFERRED DOCKET[1] |
| | *MacDonald v. BNSF Railway Company*, Cascade County Cause No. DV-16-549 Judge John Parker |

Pending before the Court is Plaintiff Jason MacDonald's *Motion for Deferred Docket*, filed April 12, 2018.[2] With the exception of International Paper, Defendants filed a *Collective Response*, and International Paper filed a separate *Response* on May 14, 2018. Plaintiffs filed a *Reply* on June 5, 2018. The Court received evidence and heard argument on July 24-25, 2018, when the matter came before the Court for an evidentiary hearing. Having reviewed the file and being fully apprised, the Court hereby finds as follows:

## ORDER

Plaintiffs' *Motion for Deferred Docket* is GRANTED in part and DENIED in part, consistent with the below rationale.

## RATIONALE

### A. Factual and Procedural Background

#### (1) Purpose and Mandate of the Asbestos Claims Court

Pursuant to Mont. Code Ann. § 3-20-101, this Court presides only over those actions "brought for the recovery of monetary damages for personal injury, wrongful death, loss of

---

[1] This *Order* replaces and supersedes any document that was filed on August 30, 2018.
[2] While filed in the context of Plaintiff Jason MacDonald's case, this motion is also brought on behalf of all other claimants before the Asbestos Claims Court that are similarly situated. These are the claimants who have a nonmalignant asbestos-related disease (ARD), with a mild/normal severity level of the disease, and generally normal pulmonary function. These claimants have also been referred to as the "unimpaired" Plaintiffs. In the context of this *Order*, the Court has attempted to achieve consistency by simply referring to the "Plaintiffs."

consortium, or other injury arising out of an asbestos-related disease that is alleged to result from the mining of vermiculite, the processing of vermiculite, or the transfer, storage, installation, or removal of a product containing vermiculite." The Montana Legislature codified the Asbestos Claims Court Act at §§ 33-20-101 through -105 ("the Act") in 2001, because "it is imperative that asbestos-related claims be dealt with expeditiously in order to allow Montana citizens with life-threatening illnesses to receive a speedy resolution of their claims."[3] The Act's effectiveness was contingent on a determination by the Montana Supreme Court that, in light of the outcome of federal bankruptcy proceedings and other circumstances that the Court deemed advisable to consider, there existed a sufficient need to implement the Act's provisions.[4]

In the aftermath of the W.R. Grace bankruptcy proceedings, and in response to an impending crisis in the state district courts, the Montana Supreme Court established the Asbestos Claims Court (ACC) in 2017.[5] In its decision to activate the ACC, the Court pointed to "the need of all parties to have asbestos-related claims timely resolved, the extraordinary complexity and cost of these cases, and the enormous detrimental impact on the resources of Montana district courts if required to litigate these cases on an individual basis."[6] While the ACC explicitly advances the interest of expediency and economy, the Montana and United States Constitutions protects parties' rights to equal protection, due process of law, and full legal redress.[7] Therefore, the ACC's purpose and mandate is to facilitate the speedy resolution of asbestos claims, while ensuring that parties' constitutional rights to fairness and process are not infringed.

### (2)  The CARD Clinic and Diagnosing Nonmalignant Asbestos Related Disease

At the Libby Asbestos Site, disease and death rate from asbestosis and asbestos-related disease (ARD) is significantly higher than the national average. In 2002, the Center for Asbestos Related Disease (CARD Clinic) was established in in Libby in response to raised awareness of widespread asbestos exposure. Since then, the CARD Clinic's stated goal has been to provide long-term screening, health monitoring, disease diagnosis, and counseling to people exposed to Libby Amphibole asbestos. The CARD Clinic also assists in ARD research. Since establishment, the CARD Clinic has mass screened approximately 5,700 people for ARD; and, it continues to actively follow the status of 7,700 patients.

The CARD Clinic initially diagnosed virtually every person potentially impacted by the present motion. Many of those individuals' initial nonmalignant ARD has unfortunately progressed to other asbestos-related diseases, including asbestosis, mesothelioma and various cancers. Fortunately, the majority of these individuals have not progressed beyond the initial

---

[3] An Act Creating the Asbestos Claims Court, 2001 Mont. Sess. Laws SB 282, Ch. 473, 2192, 2193.
[4] Mont. Code Ann. § 3-20-101 (2017) (Sec. 12 of Laws 2001, ch. 43).
[5] ACC Initial Conference Notes (Jan. 31, 2018).
[6] Order Establishing the Asbestos Claims Court and Consolidating Cases, In Re Asbestos Litigation, Cause No. AC 17-0694, 2017 WL 5949936, at *1 (Mont. Nov. 28, 2017).
[7] MONT. CONST. art. II, §§ 4, 17; U.S. CONST. amend. XIV.

nonmalignant ARD diagnosis and are not suffering from any impairment, despite the fact that 95% of them experienced their initial exposure over 30 years ago.

The parties agree that the Official Statement of the American Thoracic Society, *Diagnosis and Initial Management of Nonmalignant Diseases Related to Asbestos*, adopted December 12, 2003, represents the reliable standard of care for diagnosing nonmalignant asbestos related diseases. The ATS set forth the following criteria for making these diagnoses:

- Evidence of structural pathology consistent with asbestos related disease as documented by imaging or histology;
- Evidence of causation by asbestos as documented by the occupational and environmental history, markers of exposure (usually pleural plaques), recovery of asbestos bodies, or other means; and
- Exclusion of alternative plausible causes for the findings.[8]

Significantly, "[f]unctional assessment is not required for diagnosis but is part of a complete evaluation. It contributes to diagnosis in defining the activity of disease and the resulting impairment."[9] There are numerous ARDs, including pleural plaques, asbestosis, mesothelioma, and a variety of cancers. Pertinent to the present motion is pleural thickening, and specifically the diagnosis of lamellar pleural thickening (LPT), which appears to be unique to Libby.[10]

Historically, ARD has been diagnosed through a chest x-ray and confirmed by a certified B-reader. Numerous widely accepted standards have been in place to accurately diagnose ARD in this manner. By contrast, LPT cannot be seen on an x-ray. LPT can only be diagnosed with a CT scan, and by experts trained to recognize LPT. Complicating the diagnosis is the fact that LPT does not cause a change in pulmonary function, and can be caused by numerous other conditions unrelated to asbestos exposure—making relevant the exclusion of alternative plausible causes.

Further complicating the diagnosis is the fact that the latency period appears to extend well past 40 years, and even after a diagnosis, there is no way to predict whether the patient will develop symptoms and/or any impairment related to the disease. As such, and the parties

---

[8] American Thoracic Society, *Diagnosis and Initial Management of Nonmalignant Diseases Related to Asbestos*, adopted December 12, 2003, American Journal of Respiratory and Critical Care Medicine, vol. 170, 691 (2004).

[9] *Id.*, at 692, Table 1.

[10] MacDonald contends this Libby diagnosis is the result of the unique composition of the asbestos in Libby. In response, the Defendants argue that while Libby asbestos does have a unique composition, it was transported all over the country and that if it caused a particular type of injury, we would still see this injury diagnosed wherever the asbestos had been distributed. Instead, LPT is only seen in Libby when diagnosed at the CARD Clinic. Defendants point out that LPT is not mentioned in the medical literature until 2014, in relation to Dr. Black's studies at the CARD Clinic.

concede, no one can establish to a reasonable degree of medical certainty which unimpaired Plaintiff's disease will or will not progress.

**(3)      Test Case: *Jason C. MacDonald v. State of Montana, et al.*, Cascade County Cause No. DV-16-549, Judge John Parker, presiding.**

In the course of organizing the ACC, it was determined there are currently 2,117 individual Plaintiffs with cases pending before the ACC, involving approximately 40 individual Defendants.  In an effort to give shape to the litigation before the ACC, the Court approved master discovery requests to the Defendants, continued the process of the Plaintiffs providing releases of information for the Defendants to gather relevant information, set five test cases for trial, and approved discovery requests for those Plaintiffs whose cases had been set for trial.  In setting the individual cases for trial, care was taken to set cases involving different legal issues and injuries.  Pertinent hereto, the Court set the case of *Jason C. MacDonald v. State of Montana, et al.*, Cascade County Cause No. DV-16-549, before the Honorable Judge John Parker.

MacDonald's case was selected as a test case because his situation is similar to that of many other Plaintiffs before the ACC.  Approximately 1,224 (55%) of the total number of 2,117 Plaintiffs have a similar nonmalignant ARD diagnosis, which is rated at normal-to-mild for impairment purposes.  The "mild/normal" range is the least severe category on the spectrum of asbestos-related diseases.[11]  With this mild/normal level of severity, MacDonald is considered to be in the category of "unimpaired" Plaintiffs.  As noted above, of these 1,224 similarly situated unimpaired Plaintiffs, 1,083 (95%) have exposures that began over 30 years ago.

MacDonald claims that between 1977 and 2001 he was a Libby-area resident and injuriously exposed to Libby asbestos.[12]  In the summers of 1995 and 1996, MacDonald worked for Defendant Stimson Lumber at its logging and manufacturing operation in Lincoln County, Montana.  There, MacDonald claims that he worked in an environment that exposed him to asbestos, asbestos dust, and asbestos-contaminated materials.[13]  Outside of his work at Stimson Lumber, MacDonald shopped, socialized, and recreated in the town of Libby and its vicinity.  He also claims there was vermiculite in his home and that he was generally exposed to asbestos at several other Libby residences.[14]  Additionally, MacDonald's father and grandfather worked for W.R. Grace, and he was exposed to asbestos by way contaminants they inadvertently took home from their jobsites.[15]

MacDonald is 41 and currently lives in Anchorage, Alaska with his wife and twin daughters.[16]  He is a physical education teacher and has no smoking history.[17]  On July 8, 2013,

---

[11] Def.'s Proposed Test Case List, 3.
[12] Compl., ¶26.
[13] *Id.*, ¶¶123-24.
[14] *Id.*, ¶108; Def.'s Proposed Test Case List, 6.
[15] Def.'s Proposed Test Case List, 6.
[16] Compl. ¶26; Pl.'s Comments Re: Def.'s Proposed Lead Cases, 4.
[17] Objections to Pl.'s Proposed Lead Cases, 24; Defs.' Collective Resp. Mot. Deferred Docket, 6.

he was seen at the Center for Asbestos Related Disease ("CARD Clinic") in Libby, Montana. There is no indication before the Court why MacDonald traveled to Montana to be screened at the CARD Clinic, other than he was "self-referred."[18] The medical record from his first visit at the CARD Clinic with Michelle Boltz, FNP-C, states in relevant part:

> HPI/ROS
> CC:  History of Libby amphibole asbestos exposure, self-referred for initial screening.
> PULM:  The patient has a dry cough a few days per month, not chronic throughout the day.  He does feel short of breath with activity such as running with his kids, he is a PE teacher.  He also now reports that swimming is "too extreme" for him.  He relates this to deconditioning.
> \*     \*     \*
> Functional Assessment:
> No change in lifestyle because of breathing
> \*     \*     \*
> Activities of Libby Amphibole Asbestos Exposure:
> Lived in Libby 1977-2001.  His father was a logger and worked in the plywood plant, his mother worked at the hospital.  The patient helped shovel vermiculite into the yard, which was visible and he would pop it on a regular basis.  He worked for 3 summers at the plywood plant.  His grandfather worked at the vermiculite mine.
> \*     \*     \*
> Family Hx:
> Grandmother and father with ARD . . .
> \*     \*     \*
> Objective:
> VITALS: 140/92, heart rate 80, SpO2 98% on room air, weight 232 pounds
> SPIROMETRY: FVC 79% FEV1 80% ratio 80
> XRAY: Equivocal for thin pleural thickening on the left mid chest
> HRCT: Given history of exposure, patient decides to proceed
> \*     \*     \*
> Assessment:    History of Libby amphibole asbestos exposure—CT pending

At some point in time MacDonald went in for a CT, and on July 17, 2013, Boltz called to tell him that he had been diagnosed with ARD.  The medical record generated from that phone call states in relevant part:

> Objective:
> CT: Per Dr. Black, lamellar non-calcified pleural thickening the posterior right chest on slices 36-43.  Fatty liver
> Plan:
> Pharmacologic: No change
> ARD Referrals: Insurance Benefits Counseling
> Follow up: Recommend annual follow up including chest x-ray and PFT

---

[18] The Defendants' characterization of why MacDonald was seen at the CARD Clinic is misleading at best.

Patient Education: Encouraged continued physical activity, medication and chronic disease monitoring.

As evidenced above, although MacDonald's pulmonary function tests were within the normal range for a healthy man of his age,[19] and no disease was apparent on his chest x-ray, the CARD Clinic diagnosed him with "Asbestos Related Pleural Disease" based on his exposure history and Dr. Black's reading of his chest CT.

In order to preserve the statute of limitations, MacDonald filed his *Complaint and Demand for Jury Trial* on June 22, 2016, just shy of the three-year statute of limitations. MacDonald brought claims against 15 separate Defendants for negligence, violation of the Montana Constitution, common law strict liability, strict products liability, and safe place to work violations.[20] MacDonald alleged in his *Complaint* that he "has suffered and will suffer":

a.    Loss of enjoyment of established course of life;
b.    Loss of services which can no longer be performed;
c.    Loss of earnings and/or earning capacity;
d.    Physical, mental and emotional pain and suffering;
e.    Medical expenses, rehabilitation expenses and related expenses;
f.    Loss of insurability for medical coverage; and
g.    Great grief and sorrow.[21]

Despite alleging he has currently suffered the above harms, MacDonald now asks the Court to place his case, and similarly situated cases, on a deferred docket. MacDonald asserts he only filed his *Complaint* to preserve the statute of limitations after his diagnosis, but that he is entitled to have his litigation stayed pending actual disease progression and impairment.

**B.    Position of the Parties**

**(1)    MacDonald and Similarly Situated Plaintiffs**

Plaintiffs asserts they had no reason or desire to file their claims aside from the necessity to preserve the claims from expiration of a statute of limitations.[22] Now these Plaintiffs seek to defer determination of their claims until such time as all of their claims "ripen."[23] Because a deferred docket would prevent surprise, thereby allowing defendants to preserve evidence, memories, and witnesses, Plaintiff argues it would fulfill the overarching purpose of statutes of limitations.[24] He contends that as long as defendants have notice and the opportunity to preserve

---

[19] Pl.'s Comments Re: Def.'s Proposed Lead Cases, 4.
[20] Compl., ¶¶93, 101, 107, 115, 121, 134, 138, 147,159, 168.
[21] *Id.*, ¶¶87, 92, 100, 106, 114, 120, 133 ("suffered" from asbestos-related injuries), 137, 146 ("suffered" from asbestos-related injuries), 158, 167, 174.
[22] Pl.'s Br. Supp. Mot. Deferred Docket, 10.
[23] Pl.'s Reply Br. Supp. Mot. Deferred Docket, 3.
[24] Pl.'s Br. Supp. Mot. Deferred Docket, 11.

evidence, the purpose of statutes of limitations is advanced.[25] However, Plaintiff does not address how a deferred docket would further the overarching policy of repose, designed to protect defendants and "characteristically embod[ied]" by statutes of limitations.[26]

Nonetheless, Plaintiffs assert that a deferred docketing system will fulfill the interests of all parties.[27] The deferred docket would act as a quasi-registry for claims in which the ultimate manifestation of an asbestos-related disease is yet unknown, as is the case for these Plaintiffs. Filing and placement on the deferred docket would toll the statutes of limitations, and consideration on the merits of the claim would be deferred until any disabling injuries manifest.[28]

**(2)     International Paper**

Defendant International Paper (IP) takes the position that while there has been a diagnosis arising from a mass screening effort, these Plaintiffs legal causes of action have not accrued because they has not suffered any impairment, and, therefore, no damages. Accordingly, IP advocates for dismissal of all such claims until such harm accrues. Of course, such dismissal would beg the question of when does a plaintiff become sick enough for the element of harm to accrue? To answer this question IP proposes the Court adopt specific medical criteria for significant injury that a plaintiff would have to meet prior to being able to file an action. IP points to federal maritime and FELA claims, and various states' jurisprudence to find a Plaintiff's cause of action for an ARD does not accrue absent specific medical criteria, because there is no cognizable injury. IP asserts the "nationwide trend [is] toward the treatment of pleural plaques and pleural thickening as non-cognizable, unless and until plaintiffs exhibit physical impairments or malignancies."[29]

IP argues that a deferred docket system will merely create unnecessary administrative cost and chaos that dismissal without prejudice would avoid.[30]

Plaintiffs vehemently objects to the Court adopting such medical criteria.[31] More significant however is their position that a:

> blanket judicial finding that the Plaintiffs have no cognizable injury until their condition progresses to serious pulmonary impairment, cannot be reconciled to well-established law. In the absence of pulmonary impairment, an asbestos disease diagnosis supports a cause of action for present injuries even though future injuries are yet unknown. Such compensable "present" injuries include those arising from the strong association between asbestos disease diagnoses and asbestos-related lung cancers.[32]

---

[25] Pl.'s Br. Supp. Mot. Deferred Docket, 11.

[26] *Anderson v. BNSF Railway*, 2015 MT 240, ¶ 42, 380 Mont. 319, 354 P.3d 1248.

[27] Pl.'s Br. Supp. Mot. Deferred Docket, 2-5.

[28] *Id.*,, 5.

[29] Def. Int'l Paper Co.'s Resp. Pl.'s Mot. Deferred Docket, 5.

[30] *Id.*, 12.

[31] Pl.'s Reply Br. Supp. Mot. Deferred Docket, 1-3.

[32] *Id.*, 3.

Plaintiffs briefing goes on to delineate various categories of harm MacDonald and others similarly situated may have incurred—fear of cancer, medical monitoring, lost or diminished insurability, foreshortened life expectancies, and increased expense of economic preparedness. As previously recognized by the Court, these are not "no injury" cases.[33] Thus, not only did MacDonald allege a present injury in his *Complaint*, he continues to allege in the context of this motion that he suffers these types of injuries presently, as do these other Plaintiffs. Of course, this is the point made by the Defendants—these Plaintiffs have a present and cognizable injury ripe for adjudication.

### (3)     Collective Defendants (not including International Paper)

With the exception of IP, the Defendants vehemently argue that having alleged a present injury, both in their *Complaint* and in briefing before this Court, there is no legal or public policy basis to delay resolution of these claims. The Defendants collectively argue that indefinitely deferring or dismissing these claims without prejudice, many of which allege initial exposures beyond 30 years ago, defeats the purpose of the statute of limitations and will inhibit their ability to mount an effective defense.[34] Driving this position is not only settled Montana law, discussed below, but also the fervent belief that the LPT diagnoses coming from the CARD Clinic are inherently unreliable and lack credibility, and that these Plaintiffs do not in fact have an ARD, nor have they suffered any harm. The issue of the unreliability and lack of credibility of the CARD Clinic diagnoses will be discussed in a separate *Order*.

Defendants argue that a deferred docket would merely create the illusion of addressing the legislative mandate of the ACC—to resolve all of the currently pending asbestos cases.[35] Defendants also point out that Plaintiff MacDonald's case was chosen as a test case so it could proceed to trial and issues could be resolved for a greater class of cases like his. But, instead of clearing the backlog and resolving broad issues, Defendants contend that a deferred docket would allow cases to sit dormant until Plaintiffs unilaterally determine adjudication is proper.

## C.     Legal Analysis

As demonstrated below, a traditional tort analysis as defined by Montana law does not meet the demands of managing this category of litigation.

### (1)     Statute of Limitations

An action for personal injury must be commenced within three years from the time that the claim or cause of action accrues.[36] A claim or cause of action accrues "when all elements of

---

[33] Pl.'s Reply Br. Supp. Mot. Deferred Docket, 6.
[34] Def.s' Collective Resp. Mot. Deferred Docket, 8.
[35] *Id.*, 3.
[36] Mont. Code Ann. §27-2-204.

the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action."[37]

> Usually, all of the elements of a negligence claim occur in rapid succession. A duty is breached and the plaintiff is immediately injured as a result. With [ARD], the paradigm is far different. There is no dispute that [ARD] can take years to manifest. One person exposed to the toxins in the Libby Mine may become ill within months of exposure while another may remain symptom-free for decades. Some may never become ill at all.[38]

The parties agree that an ARD is a latent disease that is generally progressive. For this reason, most cases in Montana involving the statute of limitations for an ARD implicate the discovery doctrine to determine when the plaintiff should have realized they suffered from the disease.

Generally, lack of knowledge by the Plaintiff of the claim or cause of action, or its accrual, does not postpone the beginning of the period of limitations.[39] "However, when the facts constituting the claim are by their nature concealed or self-concealing, the period of limitations does not commence 'until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party. . . .'"[40] *Kaeding v. W.R. Grace* recognized that "[a]sbestosis is a latent disease that is, by its nature, self-concealing. Thus, the inquiry in this case is when [the plaintiff] discovered or, in the exercise of due diligence, should have discovered that he had asbestosis."[41] *Kaeding* found that despite the plaintiff's lack of actual knowledge about having asbestosis, he should have discovered he had asbestosis when his treating physician diagnosed him with asbestosis and communicated that information to his attorney for purposes of settlement with W.R. Grace.[42]

Against this backdrop, and as a result of mass screenings at the CARD Clinic, these Plaintiffs have a diagnosis of an ARD that has been communicated to their lawyers. Pursuant to *Kaeding*, they had no option but to file their *Complaints* to toll the statute of limitations.[43] However, completely distinguishable from *Kaeding*, these Plaintiffs generally were not suffering from any symptoms of an ARD that lead them to seek medical treatment. Instead, consistent with their exposure histories, the experiences of their family and community members, and at the behest of the CARD Clinic, they took advantage of early precautionary screening opportunities. They now have a diagnosis, and attendant fear and anxiety regarding that diagnosis, but the ARD has not manifested in any physical symptoms or impairment.

---

[37] Mont. Code Ann. §27-2-102(1)(a).

[38] *Orr v. State*, 2004 MT 354, ¶72, 324 Mont. 391, 106 P.3d 100.

[39] Mont. Code Ann. §27-2-102(2).

[40] *Kaeding v. W.R. Grace & Co.*, 1998 MT 160, ¶17, 289 Mont. 343, 961 P.2d 1256 (quoting Mont. Code Ann. §27-2-102(3)).

[41] *Id.*

[42] *Id.*, ¶27.

[43] Additionally, even in this context, the Defendants are still asserting the statute of limitations defense against these claimants—arguing that taking into consideration their exposure history they should have been screened earlier.

### (2) Manifestation of Injury

A cause of action accrues "when all elements of the claim . . . exist or have occurred."[44] In *Orr*, the Montana Supreme Court found the "causes of action of the surviving Miners did not accrue until damage could be proven. And no damage could be proven until their injuries were manifest."[45] In the present cases, these Plaintiffs generally have limited exposure histories, normal pulmonary function, and are essentially asymptomatic. Without the screening diagnoses from the CARD Clinic, it would be an unusual circumstance for it to be said these Plaintiffs have suffered a cognizable injury sufficient for a claim to accrue and trigger the statute of limitations.

Having received the ARD diagnosis though, these Plaintiffs have attendant fear, worry and anxiety, even if the ARD has not manifested into any physical symptoms or impairment. For this reason, the Plaintiffs have alleged a present injury which is cognizable under Montana law. While they have alleged a cognizable injury, and would be entitled to go forward to trial if they chose to do so, they argue that by forcing them to do so now, the Court would cut off any avenue to be compensated for any future impairment related to ARD, which is their largest potential category of loss. Montana law does of course allow a jury to consider future damages, when such damages are reasonably certain to occur:

> In holding, as we do, that future damages need only be reasonably certain under the evidence, it must be granted that in determining an award for future damages, a jury, or an expert testifying on the subject, must to some degree engage in conjecture and speculation. When the conjecture and speculation is based upon reasonably certain human experience as to future events, the jury or trier of fact is entitled to rely on that degree of reasonable certainty in fixing and awarding future damages. From that viewpoint, since no man has the gift of knowledge of the future, it is possibly less confusing to a jury, given the task of determining future damages, to be instructed that it may not rely "solely" on speculation or conjecture, but may utilize the reasonable certainty the evidence presents with respect to those damages.[46]

Additionally, when determining future damages associated with medical conditions, such a determination must be based on a qualified medical evidence.[47] In these cases, the parties agree there is no witness who can testify to a reasonable degree of medical certainty when, or whether, any particular Plaintiff's ARD diagnosis will progress to impairment. As such, these Plaintiffs would be foreclosed at trial from making a claim for future damages based on a future impairment as a matter of law.

For this reason, Plaintiffs argue that forcing them to trial at this stage of disease violates their constitutional right to be made whole, their constitutional right to a jury trial and their constitutional rights of equal protection and due process. In response, the Defendants counter

---

[44] Mont. Code Ann. §27-2-102(1)(a).

[45] *Orr*, ¶76.

[46] *Frisnegger v. Gibson*, 183 Mont. 57, 71, 598 P.2d 574, 582 (1979).

[47] *Moralli v. Lake County*, 255 Mont. 23, 29-30, 839 P.2d 1287, 1291 (1992).

10

that indefinitely delaying these cases on a deferred docket violates their right to due process. These arguments will be addressed in turn.

### (3) Full Legal Redress, Trial by Jury, Equal Protection and Due Process Considerations

### (i) Right to be Made Whole

Plaintiffs argue that a deferred docket will protect their constitutional right to remedy every injury inflicted by Defendants' alleged wrongful conduct.[48] Under Article II, Section 16 of the Montana Constitution, courts must afford a "speedy remedy . . . for every injury of person, property, or character.[49] Plaintiffs argue that their constitutional "right to be made whole again by what the law defines as a cause of action" would be infringed if they are forced to a premature adjudication of asbestos-related injuries that have not yet manifested.[50] Unless they are permitted to first prosecute claims based on their mild or normal diagnoses, while claims for prospective, severe injuries are preserved until they manifest,[51] Plaintiffs assert that forcing adjudication of potentially progressive illnesses would deprive them of their right under Article II, Section 16.[52]

Because less than fifty percent of these Plaintiffs may progress to severe disease, Plaintiffs argue that adjudication of such claims would infringe the constitutional guarantee to be made whole.[53] Montana Code Annotated §27-1-203 provides that "damages may be awarded in a judicial proceeding for detriment . . . certain to result in the future." Interpreting the future damages statute, the Montana Supreme Court stated in *Frisnegger v. Gibson*[54] that "future damages need only be reasonably certain, and not absolutely certain as the statute seems to imply."[55] To determine whether damages are appropriate for an injury not yet suffered, and "since no man has the gift of knowledge of the future," the trier of fact may rely on "reasonably

---

[48] Pl.'s Br. Supp. Mot. Deferred Docket, 12.

[49] MONT. CONST. art. II, § 16.

[50] Pl.'s Br. Supp. Mot. Deferred Docket, 14 (*citing Meech v. Hillhaven West, Inc.*, 238 Mont. 21, 37, 776 P2d 488, 298 (1989).

[51] This is referred to as the "second injury rule." Because these courts reject claims by asbestos victims for increased risk of cancer, on the ground that they are too speculative, the right to recover independently arises should a second injury (i.e. lung cancer or mesothelioma) develop. "It would be unfair to prohibit claims for increased risk of cancer for asbestosis sufferers and at the same time, hold that failure to bring a suit against any or all defendants when a plaintiff is suffering from asbestosis acts as a time bar to a future cancer claim. To ameliorate that potential unfairness, it has been held that the time to commence litigation does not begin to run on a separate and distinct disease until that disease becomes manifest." *Fusaro v. Porter-Hayden Co.*, 145 Misc.2d 911,917, 548 N.Y.S.2d 856, 860 (N.Y. Sup. Ct. 1989).

[52] Pl.'s Br. Supp. Mot. Deferred Docket, 14 (*citing Fusaro*, 145 Misc.2d at 917, 548 N.Y.S.2d at 860; *Miller v. Armstrong World Indus., Inc.*, 817 P.2d 111, 113 (Colo. 1991)).

[53] Pl.'s Br. Supp. Mot. Deferred Docket, 14.

[54] 183 Mont. at 71, 598 P.2d at 582.

[55] *Id.* at 71, 598 P.2d at 582.

certain human experience as to future events . . . in fixing and awarding [future] damages."[56]  In contrast to reasonably certain future damages, "speculative damages may not be recovered."[57]

Plaintiffs' concern lies in their inability to prove with the requisite "reasonable degree of certainty" that their mild or normal ARD will progress to a severe sickness like lung cancer or mesothelioma,[58]  because the majority of patients with non-malignant ARD do not develop cancer.[59]

Defendants' *Collective Response* addresses this concern only by stating "future damages adequately account for this phenomenon" and that Plaintiff pled for them in his *Complaint*.[60]  But, as discussed above, these Plaintiffs likely cannot recover future damages for the risk of a severe illness—it is not reasonably certain their diseases will progress to lung cancer or mesothelioma.  A deferred docket, Plaintiffs assert, provides the opportunity for those who may become severely ill to recover fully if their unimpaired condition progresses to cancer or mesothelioma.[61]

The Court agrees.

### (ii)      Right to Jury Trial

In addition to their contention that adjudication of Plaintiffs' claims will prohibit full recovery of damages, Plaintiffs also contend that trying these cases before severe illnesses manifest will infringe on the constitutional right to trial by jury.[62]  In Montana, "the right to trial by jury is secured to all and shall remain inviolate."[63]  Similarly, the U.S. Constitution preserves the right to trial by jury in civil trials.[64]

In support of this argument, Plaintiffs cite to an insurance bad faith case in which the insured elected to pursue a remedy for his claim in tort rather than in contract, while the insurer sought to bifurcate the trial to address various evidentiary issues.[65]  The Montana Supreme Court held that bifurcation "would have converted [the insured's] claim for tort to one for breach of contract . . . [and] would then have been precluded from presenting any evidence as to the

---

[56] *Id.* at 71, 598 P.2d at 582.

[57] *Walton v. City of Bozeman*, 179 Mont, 351, 357, 588 P.2d 518, 522 (1978).

[58] Pl.'s Br. Supp. Mot. Deferred Docket, 14.

[59] American Thoracic Society Documents, *Diagnosis and Initial Management of Nonmalignant Diseases Related to Asbestos*, OFFICIAL STATEMENT OF THE AMERICAN THORACIC SOCIETY (Dec. 12, 2003).

[60] Def.s' Collective Resp. Mot. Deferred Docket, 11.

[61] Pl.'s Br. Supp. Mot. Deferred Docket, 14.

[62] Pl.'s Br. Supp. Mot. Deferred Docket, 15 (*citing* MONT. CONST. art. II, § 26; U.S CONST. amend. VII).

[63] MONT. CONST. art. II., § 26.

[64] U.S CONST. amend. VII.

[65] *Britton v. Farmers Ins. Group*, 221 Mont. 67, 92, 721 P.2d 303, 319 (1986).

consequential damages for the tort."[66]  Therefore, bifurcation would deny the insured his right to trial by jury for his tort claim.[67]  Here, Plaintiffs contend that because they are currently unable to present evidence of damages that have not occurred, final adjudication at this stage will similarly deprive them of their right to trial by jury on the entirety of their claims.[68]

This Court rejects this claim.  Regardless of when or how Plaintiffs presents their claim, it will be before a jury.

### (iii)    Equal Protection

By trying these claims prior to manifestation of a malignant illness, Plaintiffs argue that their right to equal protection is violated.[69]  The Montana Supreme Court has succinctly stated that: "the basic rule of equal protection 'is that persons similarly situated with respect to a legitimate governmental purpose of the law must receive like treatment.'"[70]

Plaintiffs argue that they and Plaintiffs with malignant diseases are similarly situated based on their "identical asbestos injuries"—these Plaintiffs' respective injuries simply have yet to manifest.[71]  They assert adjudication of their claims violates the guarantee of equal protection, because unlike the other members of the class of "identical asbestos injuries," they are forced to try their cases before their diseases are sufficiently manifest for an evaluation of full damages.[72]  Plaintiffs see no governmental purpose in pushing these cases to trial prior to disease manifestation. Plaintiffs do not then analyze whether adjudicating all claims in the ACC regardless of the respective severity of Plaintiffs' illnesses is rationally related to a legitimate governmental purpose.[73]  They simply conclude that a deferred docket system would allow all members of the class to proceed to trial at the same stage—when their respective diseases progress to a point at which the outcome is provable.[74]

Plaintiffs' equal protection argument is not well taken, and the inaccuracy of their descriptor of the group in question requires comment.  Plaintiffs assert they suffer from "identical asbestos injuries" from which Plaintiffs with malignant disease suffer.[75]  However, Plaintiffs admit earlier their illnesses may not progress to malignancy.[76]  Indeed, the American Thoracic Society has said that, while the presence of nonmalignant disease correlates closely to

---

[66] *Britton*, 221 Mont. at 93, 721 P.2d at 319.
[67] *Id.* (*citing* MONT. CONST. art. II, § 26; U.S CONST. amend. VII).
[68] Pl.'s Br. Supp. Mot. Deferred Docket, 15.
[69] *Id.*, (*citing* U.S. CONST. amend. XIV, § 1; MONT. CONST. art. II, § 4.)
[70] *Oberson v. U.S. Dept. of Ag., Forest Svc.*, 2007 MT 293, ¶ 19, 339 Mont. 519, 525, 171 P.3d 715, 720 (*quoting Rausch v. State Compensation Ins. Fund*, 2005 MT 140, ¶ 18, 327 Mont. 272, 277, 114 P.3d 192, 195).
[71] *Id.*, 15.
[72] *Id.*, 16.
[73] *Id.*, 17.
[74] *Id.*, 16.
[75] *Id.*, 15.
[76] *Id.*, 5.

the risk of malignancy, the majority of patients with non-malignant asbestos-related disease do not develop cancer.[77] Therefore, these Plaintiffs do not suffer from "identical asbestos injuries" to cancer and mesothelioma Plaintiffs. These Plaintiffs' ARDs are distinct from cancer and mesothelioma until and unless they progress to the same. There is no viable equal protection claim on this basis.

### (iv) Due Process

Plaintiffs' final constitutional argument is grounded in due process rights guaranteed by the Montana and United States Constitutions.[78] Under both documents, the state cannot deprive a person of "life, liberty, or property without due process of law."[79] A cause of action is a property right, and its deprivation triggers due process protection.[80]

Plaintiffs contend that pushing them to adjudication at this point will result in violations of both procedural and substantive due process rights.[81] Essentially, though, Plaintiffs argue that the *procedure* of pushing trial prior to the manifestation of an impairment results in the deprivation of a property interest; therefore, the analysis relies on the procedural due process test in *Mathews v. Eldridge.*[82]

*Mathews* sets forth three factors to consider in determining whether due process has been violated procedurally:

(1)    The private interest that will be affected by the official action;
(2)    The risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and
(3)    The government's interest.[83]

Plaintiffs urge the Court to find that the "private interest" at stake is "the substantive right to compensation for wrongful injury, their access to the judicial remedy prescribed by law, and their right to jury trial."[84] The Plaintiffs argue that trial prior to disease manifestation will deprive them of their private interest in their cause of action, because the jury will not be able to assess compensation for a severe disease that may, but likely will not, manifest.[85]

---

[77] American Thoracic Society Documents, *supra* note 39.

[78] Pl.'s Br. Supp. Mot. Deferred Docket, 17 (*citing* MONT. CONST. art. II., § 17; U.S CONST. amend. XIV).

[79] MONT. CONST. art. II., § 17; U.S CONST. amend. XIV

[80] Pl.'s Br. Supp. Mot. Deferred Docket, 17 (*citing Tax Lien Servs. v. Hall*, 227 Mont. 126, 131, 919 P.2d 396, 399 (1996)).

[81] Pl.'s Br. Supp. Mot. Deferred Docket, 18.

[82] *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

[83] *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903.

[84] Pl.'s Br. Supp. Mot. Deferred Docket, 19.

[85] *Id.*, 19.

While the second prong of the *Mathews* test balances the risk of erroneous deprivation against the cost of a safeguard, the Plaintiffs simply state that the value of the safeguard—the deferred docket—will be in the complete adjudication of claims only when they are ripe.[86] Plaintiffs do not address the risk of erroneous deprivation. If the majority of Plaintiffs' diseases will never progress to malignancy, is the risk borne by the unfortunate minority worth the creation of an additional docket in an already backlogged system?

Finally, Plaintiffs assert that the third prong of the *Mathews* test is clear: the government interest in staying the litigation until malignancy is five-fold. First, the government can provide effective administration of justice for all asbestos litigants, not merely for the sickest. Second, court resources will be conserved by trying only cases that are prepared to fully adjudicate. Third, these Plaintiffs whose diseases never progress will not waste court resources by trying cases that otherwise would not be. Fourth, the sickest Plaintiffs' trials will not be delayed by the trials of the unimpaired. Finally, complex litigation procedures can be employed to efficiently and effectively resolve these claims by way of rulings in the cases of the sick.[87]

In contrast, the collective Defendants argue that it is their right to due process that would be jeopardized by delayed litigation. Because these Plaintiffs have alleged present diagnoses of present illnesses and pled present damages, Defendants reject Plaintiffs' concern that asking them to litigate their claims presently poses any due process violation. Instead, forcing Defendants to indefinitely wait to litigate claims against them violates their due process right to be "inform[ed] . . . of proceedings which may directly affect their legally protected interests."[88]

However, Defendants concede that a deferred docketing system may address their due process concerns if the parties can agree on specific medical criteria for determining asbestos-related "impairment" other than simply a diagnosis from the CARD Clinic.[89] And, while IP advocates for dismissal without prejudice, it agrees that if the Court chooses the deferred docket avenue, setting specific medical criteria would provide parties clarity and protect its constitutional rights.[90] By establishing objective medical criteria by which cases will be "activated" for litigation or deferred, Defendants' notice rights are protected and Plaintiffs cannot "unilaterally decide which cases ought to be deferred, and which cases ought to be activated."[91]

If a deferred docketing system is created, Defendants point to various deferred docket jurisdictions and urge the court to adopt the specific medical criteria used in Texas to activate cases.[92] Defendants also reference other jurisdictions, like New York City, that require certain

---

[86] Pl.'s Br. Supp. Mot. Deferred Docket, 19.

[87] *Id.*, 19-20.

[88] Def.s' Collective Resp. Mot. Deferred Docket, 19 (*citing Pickens v. Shelton-Thompson*, 2000 MT 131, ¶15, 300 Mont. 16, 3 P.3d 603).

[89] *Id.*, 19.

[90] Def. Int'l Paper Co.'s Resp. Pl.'s Mot. Deferred Docket, 9.

[91] Def.s' Collective Resp. Mot. Deferred Docket, 19-20.

[92] *Id.*, 21 (*citing* TEX. CIV. PRAC. & REM. CODE. ANN. § 90.003(a) (2015)).

medical diagnoses prior to activation, but are more general than Texas' requirements.[93] However, Defendants' priority, which corresponds with its concerns about the validity of CARD Clinic diagnoses, is that certified B readers examine Plaintiffs' x-rays prior to activation.[94]

The Court finds the procedural and substantive due process concerns raised by the parties are appropriately addressed by a deferred docket, which includes certain safeguards.

## C.    Establishment of a Deferred Docket System

The Asbestos Claims Court possesses "the inherent power to do those acts necessary to ensure [its] proper functioning."[95] Section 3–1–113, Montana Code Annotated codifies the concept of inherent power and "provides that when jurisdiction is conferred on a court or judicial officer, all the means necessary for the exercise of that jurisdiction are also given."[96] A docketing system in which the sickest plaintiffs' claims are prioritized and objective medical criteria is required for claim activation advances the ACC's legislative and constitutional mandates of efficiency and equity. In so ruling, the Court finds this determination properly balances the competing practical and constitutional interests of the parties within the context of existing Montana law.

While some legislatures have created medical criteria statutes like the one Defendants advance to respond to the instant issue, many courts have also created inactive or deferred systems whereby the claims of the unimpaired are set aside.[97] Courts in New York City, Cleveland, Seattle, Baltimore, Minnesota, and Massachusetts, among others, have created deferred docketing systems to manage the "elephantine mass of asbestos cases" that "defies customary judicial administration" and the issue of "unimpaired" Plaintiffs.[98]

### (1)    Identification of Deferred Docket Cases

Referring to the Plaintiff's Master Claim List, the following cases will be placed on the deferred docket:

(a)     The Plaintiff has been diagnosed with a nonmalignant ARD; and
(b)     The Plaintiff has a mild or normal disease severity.

In addition, all subsequently filed cases meeting the above criteria will automatically be placed on the deferred docket after a Complaint and Demand for Jury Trial have been filed in district court.

---

[93] Def.s' Collective Resp. Mot. Deferred Docket, 20.

[94] *Id*., 24.

[95] *Clark v. Dussault*, 265 Mont. 479, 486, 878 P.2d 239, 243 (1994).

[96] *Id.*

[97] Joseph Sanders, *Medical Criteria Acts: State Statutory Attempts to Control the Asbestos Litigation*, 37 Sw. U. L. Rev. 671, 676–77 (2008).

[98] Sanders, *supra* 97, at 677; *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 821 (2003).

**(2)    Transfer to Active Docket**

A case on the deferred docket is "activated" and will be placed on the active docket when the Plaintiff meets the following criteria:

(a)    The Plaintiff receives a diagnosis of a malignant ARD;

(b)    The Plaintiff dies and there is competent and credible medical evidence that an ARD was a substantial factor in the cause of death;

(c)    The Plaintiff has a diagnosis of a nonmalignant ARD; and
(i)    a Total Lung Capacity (TLC) measurement of less than 80% of predicted, or
(ii)    a Forced Vital Capacity (FVC) of less than 80% of predicted, and a FEV1/FVC ratio greater or equal to 65%; or

(d)    The Plaintiff elects to be placed on the active docket.

This Court will not impose nonmalignant ARD diagnostic criteria that is more specific than that endorsed by the American Thoracic Society. However, in presenting a diagnosis of a nonmalignant ARD, the Court will expect to see competent and credible evidence from a qualified medical provider of the following:

(a)    Evidence of structural pathology consistent with asbestos related disease as documented by imaging or histology;

(b)    Evidence of causation by asbestos as documented by the occupational and environmental history, markers of exposure (usually pleural plaques), recovery of asbestos bodies, or other means; and

(c)    Exclusion of alternative plausible causes for the findings.[99]

Failure to provide evidence regarding these three categories will result in the diagnosis being rejected.

**(3)    Management of Deferred Docket**

The Court takes seriously the Defendants' concerns that these cases will simply be allowed to languish on the deferred docket in violation of the Defendants' due process rights. Accordingly, to remain on the deferred docket and avoid dismissal, Plaintiffs and their counsel are responsible for the following:

---

[99] American Thoracic Society, *Diagnosis and Initial Management of Nonmalignant Diseases Related to Asbestos*, *supra* note 7.

(a)    By January 1 of each year Plaintiffs' counsel is responsible for filing with the Court a Deferred Docket Master Claims List identifying each claim currently pending on the deferred docket.

(b)    All Plaintiffs on the deferred docket are responsible for undergoing an annual medical exam sufficient to address the criteria outlined above as to whether a case should be moved to the active docket. Such exam must be completed by July 1 of each year, beginning in 2019. Failure to comply with this requirement will result in sanctions, up to and including dismissal. The records generated during such medical exam must also be provided to the Defendants.

**(4)    Mandatory Settlement Conferences**

In an effort to efficiently bring resolution to largest number of Plaintiffs, and candidly acknowledging that the judicial system is ill-equipped to bring timely resolution to each of these claimants on an individual basis[100], each Plaintiff with an initial exposure date of at least 30 years ago is required to attend a mandatory settlement conference within one year of the date of this *Order*. As demonstrated below, targeting a 30-year latency period before being required to attend a settlement conference is supported by the medical literature.

Defendants have advocated against a deferred docketing system, in part, because Plaintiff MacDonald's alleged initial exposure to asbestos was 41 years ago, and this is a sufficient latency period for disease development. However, in 2018, the Mayo Clinic estimated the latency period for asbestosis is ten to forty years after the initial exposure.[101] The steadily increasing latency period is attributed to regulations that have progressively diminished permissible asbestos exposure levels.[102] For example, in work sites that satisfy modern recommended asbestos-control levels, clinical asbestosis in workers is a less severe disease that manifests after a longer latency period.[103] Meanwhile, mesothelioma arises typically from short-term, high-level asbestos exposures or chronic low-level asbestos exposures, especially to amphibole asbestos.[104] Relatively short-term asbestos exposures of one or two years have been

---

[100] Virtually every claimant before the ACC has filed their Complaint in either the First, Eighth, Eleventh, or Nineteenth Judicial Districts, with the vast majority (over 90%) filed in the Eighth Judicial District. Even assuming the workload was divided evenly amongst the District Court Judges of these judicial districts, and they each tried an asbestos case every month, it would take over 13 years to resolve the pending claims.

[101] Mayo Clinic, *Asbestosis*, MAYOCLINIC.ORG (March 7, 2018), https://www.mayoclinic.org/diseases-conditions/asbestosis/symptoms-causes/syc-20354637 (last visited June 21, 2018).

[102] Brooke T. Mossman & Andrew Chung, *Mechanisms in the Pathogenesis of Asbestosis and Silicosis*, 157 AM. THORACIC SOC. JOURNALS 1666, 1667 (1998).

[103] American Thoracic Society Documents, *supra* note 58 at 697.

[104] Agency for Toxic Substances & Disease Regulation, *Environmental Health and Medicine Education: Asbestos Toxicity*, ATSDR.CDC.GOV (Jan. 29, 2014),

linked to the development of mesothelioma twenty to twenty-five years later, and the risk peaks approximately thirty-five years after initial exposure.[105]  Still, the latency period can extend to approximately sixty years after initial exposure.[106]

DATED this 13th day of September, 2018.

/s/ Amy Eddy

_____

Amy Eddy, Asbestos Claims Court Judge

---

https://www.atsdr.cdc.gov/csem/csem.asp?csem=29&po=11 (last visited June 19, 2018) (*citing* The American Thoracic Society).
[105] Jean D. Wilson, et al., HARRISON'S PRINCIPLES OF INTERNAL MEDICINE, 1058 (12th ed. 1991).
[106] ATSDR.CDC.GOV, *supra* note 111.

# CERTIFICATE OF SERVICE

I, Amy Poehling Eddy, hereby certify that I have served true and accurate copies of the foregoing Other - Other to the following on 09-13-2018:


Roger M. Sullivan (Attorney)
345 1st Avenue E
MT
Kalispell MT 59901
Representing: Adams, et al
Service Method: eService

Allan M. McGarvey (Attorney)
345 1st Avenue East
Kalispell MT 59901
Representing: Adams, et al
Service Method: eService

Jon L. Heberling (Attorney)
345 First Ave E
Kalispell MT 59901
Representing: Adams, et al
Service Method: eService

John F. Lacey (Attorney)
345 1st Avenue East
Kalispell MT 59901
Representing: Adams, et al
Service Method: eService

Ethan Aubrey Welder (Attorney)
345 1st Avenue East
Kalispell MT 59901
Representing: Adams, et al
Service Method: eService

Dustin Alan Richard Leftridge (Attorney)
345 First Avenue East
Montana
Kalispell MT 59901
Representing: Adams, et al

Service Method: eService

Jeffrey R. Kuchel (Attorney)
305 South 4th Street East
Suite 100
Missoula MT 59801
Representing: Accel Performance Group LLC, et al, MW Customs Papers, LLC
Service Method: eService

Danielle A.R. Coffman (Attorney)
1667 Whitefish Stage Rd
Kalispell MT 59901
Representing: Accel Performance Group LLC, et al, MW Customs Papers, LLC
Service Method: eService

Gary M. Zadick (Attorney)
P.O. Box 1746
#2 Railroad Square, Suite B
Great Falls MT 59403
Representing: Honeywell International
Service Method: eService

Gerry P. Fagan (Attorney)
27 North 27th Street, Suite 1900
P O Box 2559
Billings MT 59103-2559
Representing: CNH Industrial America LLC
Service Method: eService

G. Patrick HagEstad (Attorney)
PO Box 4947
Missoula MT 59806
Representing: Crane Co., United Conveyor Corporation, Riley Stoker Corporation et al
Service Method: eService

Rachel Hendershot Parkin (Attorney)
PO Box 4947
Missoula MT 59806
Representing: Crane Co.
Service Method: eService

Mark Andrew Thieszen (Attorney)
Poore Roth & Robinson, P.C.
1341 Harrison Ave
Butte MT 59701
Representing: The William Powell Company, Atlantic Richfield Company, et al
Service Method: eService

Patrick M. Sullivan (Attorney)

1341 Harrison Ave
Butte MT 59701
Representing: The William Powell Company, Atlantic Richfield Company, et al
Service Method: eService

Jennifer Marie Studebaker (Attorney)
210 East Capitol Street
Suite 2200
Jackson MS 39201
Representing: Goulds Pump LLC, Grinnell Corporation, ITT LLC, et al, International Paper Co.
Service Method: eService

Joshua Alexander Leggett (Attorney)
210 East Capitol Street, Suite 2200
Jackson MS 39201-2375
Representing: Goulds Pump LLC, Grinnell Corporation, ITT LLC, et al, International Paper Co.
Service Method: eService

Vernon M. McFarland (Attorney)
200 South Lamar Street, Suite 100
Jackson MS 39201-4099
Representing: Goulds Pump LLC, Grinnell Corporation, ITT LLC, et al, International Paper Co.
Service Method: eService

Jean Elizabeth Faure (Attorney)
P.O. Box 2466
1314 Central Avenue
Great Falls MT 59403
Representing: Goulds Pump LLC, Grinnell Corporation, ITT LLC, et al, Borg Warner Morse Tec LLC, International Paper Co.
Service Method: eService

Jason Trinity Holden (Attorney)
1314 CENTRAL AVE
P.O. BOX 2466
Montana
GREAT FALLS MT 59403
Representing: Goulds Pump LLC, Grinnell Corporation, ITT LLC, et al, Borg Warner Morse Tec LLC, International Paper Co.
Service Method: eService

Chad E. Adams (Attorney)
PO Box 1697
Helena MT 59624
Representing: Weir Valves & Controls USA, Cyprus Amex Minerals Company, Fischbach and Moore, Inc. et al, American Honda Motor Co., Inc., Harder Mechanical Contractors, Nissan North American Inc.
Service Method: eService

Katie Rose Ranta (Attorney)
Faure Holden, Attorneys at Law, P.C.
1314 Central Avenue
P.O. Box 2466
GREAT FALLS MT 59403
Representing: Borg Warner Morse Tec LLC
Service Method: eService

John Patrick Davis (Attorney)
1341 Harrison Avenue
Butte MT 59701
Representing: Atlantic Richfield Company, et al
Service Method: eService

Stephen Dolan Bell (Attorney)
Dorsey & Whitney LLP
125 Bank Street
Suite 600
Missoula MT 59802
Representing: Ford Motor Company
Service Method: eService

Dan R. Larsen (Attorney)
Dorsey & Whitney LLP
111 South Main
Suite 2100
Salt Lake City UT 84111
Representing: Ford Motor Company
Service Method: eService

Peter L. Helland (Attorney)
311 Klein Avenue, Suite A
P.O. Box 512
Glasgow MT 59230
Representing: Ford Motor Company
Service Method: eService

Kelly Gallinger (Attorney)
315 North 24th Street
Billings MT 59101
Representing: Maryland Casualty Corporation
Service Method: eService

Charles J. Seifert (Attorney)
P.O. Box 598
Helena MT 59624
Representing: Ford Motor Company, Maryland Casualty Corporation
Service Method: eService

Robert J. Phillips (Attorney)
Garlington, Lohn & Robinson, PLLP
P.O. Box 7909
Missoula MT 59807
Representing: BNSF Railway Company
Service Method: eService

Emma Laughlin Mediak (Attorney)
Garlington, Lohn & Robinson, PLLP
P.O. Box 7909
Missoula MT 59807
Representing: BNSF Railway Company
Service Method: eService

Daniel Jordan Auerbach (Attorney)
201 West Railroad St., Suite 300
Missoula MT 59802
Representing: Weir Valves & Controls USA, Cyprus Amex Minerals Company
Service Method: eService

Leo Sean Ward (Attorney)
PO Box 1697
Helena MT 59624
Representing: Weir Valves & Controls USA, Cyprus Amex Minerals Company, Fischbach and Moore, Inc. et al, American Honda Motor Co., Inc., Harder Mechanical Contractors, Nissan North American Inc.
Service Method: eService

Robert B. Pfennigs (Attorney)
P.O. Box 2269
Great Falls MT 59403
Representing: Stimson Lumber Company, Zurn Industries, Inc., Mazda Motor of America, Inc.
Service Method: eService

Rick A. Regh (Attorney)
P.O. Box 2269
GREAT FALLS MT 59403
Representing: Stimson Lumber Company, Zurn Industries, Inc., Mazda Motor of America, Inc.
Service Method: eService

Mark Trevor Wilson (Attorney)
300 Central Ave.
7th Floor
P.O. Box 2269
Great Falls MT 59403
Representing: Stimson Lumber Company, Zurn Industries, Inc., Mazda Motor of America, Inc.
Service Method: eService

Robert M. Murdo (Attorney)

203 N orth Ewing
Helena MT 59601
Representing: Mine Safety Appliance Company LLC
Service Method: eService

Murry Warhank (Attorney)
203 North Ewing Street
Helena MT 59601
Representing: Mine Safety Appliance Company LLC
Service Method: eService

Ben A. Snipes (Attorney)
Kovacich Snipes, PC
P.O. Box 2325
Great Falls MT 59403
Representing: Backen et al, Sue Kukus, et al
Service Method: eService

Mark M. Kovacich (Attorney)
Kovacich Snipes, PC
P.O. Box 2325
Great Falls MT 59403
Representing: Backen et al, Sue Kukus, et al
Service Method: eService

Ross Thomas Johnson (Attorney)
P.O. Box 2325
Great Falls MT 59403
Representing: Backen et al, Sue Kukus, et al
Service Method: eService

Randy J. Cox (Attorney)
P. O. Box 9199
Missoula MT 59807
Representing: A.W. Chesterson Company
Service Method: eService

Zachary Aaron Franz (Attorney)
201 W. Main St.
Suite 300
Missoula MT 59802
Representing: A.W. Chesterson Company
Service Method: eService

M. Covey Morris (Attorney)
Tabor Center
1200 Seventeenth St., Ste. 1900
Denver CO 80202
Representing: FMC Corporation

Service Method: eService

Robert J. Sullivan (Attorney)
PO Box 9199
Missoula MT 59807
Representing: Ingersoll-Rand, Co.
Service Method: eService

Dale R. Cockrell (Attorney)
145 Commons Loop, Suite 200
P.O. Box 7370
Kalispell MT 59904
Representing: State of Montana
Service Method: eService

Vaughn A. Crawford (Attorney)
SNELL & WILMER, L.L.P.
400 East Van Buren
Suite 1900
Phoenix AZ 85004
Representing: The Proctor & Gamble Company et al
Service Method: eService

Tracy H. Fowler (Attorney)
15 West South Temple
Suite 1200
South Jordan UT 84101
Representing: The Proctor & Gamble Company et al
Service Method: eService

Martin S. King (Attorney)
321 West Broadway, Suite 300
P.O. Box 4747
Missoula MT 59806
Representing: Foster Wheeler Energy Services, Inc.
Service Method: eService

Maxon R. Davis (Attorney)
P.O. Box 2103
Great Falls MT 59403
Representing: Continental Casualty Company
Service Method: eService

Tom L. Lewis (Attorney)
2715 Park Garden Lane
Great Falls MT 59404
Representing: Harold N. Samples
Service Method: eService

Keith Edward Ekstrom (Attorney)
601 Carlson Parkway #995
Minnetonka MN 55305
Representing: Brent Wetsch
Service Method: eService

William Rossbach (Attorney)
401 N. Washington
P. O. Box 8988
Missoula MT 59807
Representing: Michael Letasky
Service Method: eService

Kennedy C. Ramos (Attorney)
1717 Pennsylvania Avenue NW
1200
wash DC 20006
Representing: Maryland Casualty Corporation
Service Method: eService

Edward J. Longosz (Attorney)
1717 Pennsylvania Avenue NW
Suite 1200
Washington DC 20006
Representing: Maryland Casualty Corporation
Service Method: eService

Chad M. Knight (Attorney)
929 Pearl Street
Ste. 350
Boulder CO 80302
Representing: BNSF Railway Company
Service Method: eService

Anthony Michael Nicastro (Attorney)
401 North 31st Street
Suite 770
Billings MT 59101
Representing: BNSF Railway Company
Service Method: eService

Nadia Hafeez Patrick (Attorney)
929 Pearl Street Suite 350
Boulder CO 80302
Representing: BNSF Railway Company
Service Method: eService

Kevin A. Twidwell (Attorney)
1911 South Higgins Ave

PO Box 9312
Missoula MT 59807
Representing: Libby School District #4
Service Method: eService

Jinnifer Jeresek Mariman (Attorney)
345 First Avenue East
Kalispell MT 59901
Representing: Adams, et al
Service Method: eService

John Eric Bohyer (Attorney)
283 W Front, Suite 201
PO Box 7729
Missoula MT 59807
Representing: Ziegler Lumber Company
Service Method: eService

Ryan T. Heuwinkel (Attorney)
283 W Front St, Suite 201
PO Box 7729
Missoula MT 59807
Representing: Ziegler Lumber Company
Service Method: eService

Stephanie A. Hollar (Attorney)
P.O. Box 2269
Great Falls MT 59403
Representing: Stimson Lumber Company
Service Method: eService

Michael Crill (Other)
PO Box 145
Rimrock AZ 86335
Service Method: Conventional

Michael D. Plachy (Attorney)
1200 17th Street
Denver CO 80202
Representing: Honeywell International
Service Method: Conventional

Conor A. Flanigan (Attorney)
1200 17th Street
Denver CO 80202
Representing: Honeywell International
Service Method: Conventional

Fredric A. Bremseth (Attorney)

601 Carlson Parkway, Suite 995
Minnetonka MN 55305-5232
Representing: Brent Wetsch
Service Method: Conventional

Walter G. Watkins (Attorney)
210 E. Capitol Street, Ste. 2200
Jackson MS 39201
Representing: International Paper Co.
Service Method: Conventional

Jason Eric Pepe (Attorney)
519 Southwest Boulevard
Kansas City MO 64108
Representing: BNSF Railway Company
Service Method: Conventional

Peter A. Moir (Attorney)
701 Poydras Street, Suite 2200
New Orleans LA 70139-6001
Representing: International Paper Co.
Service Method: Conventional

Electronically Signed By: Amy Poehling Eddy
Dated: 09-13-2018